UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.

JOSEPH ROSEMOND
      Plaintiff

v.

STOP AND SHOP SUPERMARKET COMPANY,
      Defendant

04-30072-KPN

FILING FEE PAID:
RECEIPT # 305574
AMOUNT $ 150.00
BY DPTY CLK [illegible]
DATE 4/7/04

## COMPLAINT

### PARTIES

1. The Plaintiff, Joseph Rosemond ("Mr. Rosemond") is a natural person with a residence in Springfield, Hampden County, Massachusetts.

2. The Defendant, Stop and Shop Supermarket Company ("Defendant"), is a foreign corporation organized under the laws of Delaware, with a principal Massachusetts office at 1385 Hancock Street, Quincy, Norfolk County, Massachusetts, and store locations throughout the Commonwealth of Massachusetts

### JURISDICTION

3. Jurisdiction is pursuant to 42 U.S.C. § 2000e - 5(f)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

4. Venue is pursuant to 42 U.S.C. § 2000e - 5(f)(3).

5. On or about December 16, 2003, Mr. Rosemond filed a charge of discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission.

6. On March 4, 2004, Mr. Rosemond requested permission to withdraw his charge of discrimination from the Massachusetts Commission Against Discrimination. More than ninety (90) days have elapsed since the filing of the charge of discrimination.

1

7. Mr. Rosemond received his release of jurisdiction letter from the Equal Employment Opportunity Commission on April 1, 2004.

## FACTS

8. Mr. Rosemond is African American.

9. Mr. Rosemond has been employed with the Defendant since July of 1994.

10. Currently, Mr. Rosemond is a Customer Service Manager in the Defendant's store located at 672 Memorial Drive in Chicopee, Massachusetts (the "Chicopee Store").

11. During the summer of 2003, Mr. Rosemond attended a meeting in the Chicopee store with his supervisor, Mike Leach.

12. Mr. Leach was at all relevant times the Manager of the Chicopee Store.

13. Mr. Rosemond brought coffee to the meeting for himself and Mr. Leach.

14. When Mr. Rosemond arrived at the meeting, Mr. Leach and the manager of the Chicopee Store Bake Shop, David Taranova were in attendance.

15. Because Mr. Rosemond was not aware that Mr. Taranova would be attending the meeting, he did not bring coffee for Mr. Taranova.

16. Upon realizing that Mr. Rosemond did not have coffee for him, Mr. Taranova exclaimed, "Where's my coffee? What am I, Black?"

17. Although Mr. Leach heard Mr. Taranova's statement, Mr. Leach did not reprimand Mr. Taranova or indicate in any way that the statement was inappropriate.

18. After the meeting, Mr. Rosemond made a complaint to Mr. Leach about Mr. Taranova's statement.

19. In the Fall of 2003, Mr. Taranova approached Mr. Rosemond and said that the Defendant would not have as many problems if it did not have so many minorities in management positions.

20. Mr. Rosemond was offended by Mr. Taranova's statements.

21. On the morning of December 10, 2003, Mr. Rosemond arrived at the Chicopee Store and discovered a noose hanging from the ceiling of his office.

22. Because a noose is a symbol and instrument of racially motivated violence

against African Americans, the noose made Mr. Rosemond feel offended, threatened, and intimidated.

23. Mr. Rosemond was the only African American that worked in his office.

24. Mr. Rosemond shared his office with Marcy Wutka, a Caucasian Assistant Store Manager.

25. Marcy Watuka was on vacation on December 10, 2003. She had been on vacation for several days prior to December 10, 2003. She was scheduled to be on vacation for several days following December 10, 2003.

26. Mr. Rosemond complained about the noose to Mr. Leach on December 10, 2003.

27. Initially, Mr. Leach did not appear to take Mr. Rosemond's complaint seriously or indicate that he would take any action as a result of Mr. Rosemond's complaint.

28. Because it did not appear that Mr. Leach was going to take any action, Mr. Rosemond explained his serious distress regarding the noose to Mr. Leach.

29. After Mr. Rosemond expressed his distress, Mr. Leach asked the Chicopee Store's security staff to review the video surveillance tapes.

30. The video surveillance tapes revealed that three individuals from the Chicopee Store Meat Department went into Mr. Rosemond's office before Mr. Rosemond arrived at the Chicopee Store on December 10, 2003.

31. The surveillance video showed that Charles Ingalls, a meat cutter, and Jeramie Rankin, a seafood clerk, entered Mr. Rosemond's office first.

32. Stanley Kaletta, the Manager of the Chicopee Store Meat Department entered Mr. Rosemond's office after Mr. Rankin and Mr. Ingalls hung the noose.

33. Mr. Rankin and Mr. Ingalls admitted that they hung the noose in Mr. Rosemond's office.

34. Mr. Rankin and Mr. Ingalls claimed that the noose was merely a joke that was intended for the vacationing, Caucasian Marcy Watuka.

35. Although Mr. Kaletta did not physically hang the noose, he was aware of the noose incident.

36. Although Mr. Rosemond has expressed his concerns about the noose incident to several of Defendant's upper-level management employees, Defendant has not expressed any regret or apology for the behavior of Mr. Kaletta, Mr. Rankin or Mr. Ingalls.

37. Instead, Defendant has dismissed Mr. Rosemond's concerns and asserted that the noose was a joke that was intended for Mr. Rosemond's vacationing, Caucasian officemate, Marcy Watuka.

38. After the investigation was concluded, Scott Ziter, the head of the Chicopee Store Security, told Mr. Rosemond that he did not think that the three employees should be terminated.

40. Defendant did not terminate any of the employees involved in the noose incident.

41. Defendant suspended Mr. Rankins and Mr. Ingalls without pay for two and a half weeks and then allowed them to return to work.

42. Mr. Rankin and Mr. Ingalls were assigned to different stores upon their return.

43. Defendant spoke to Mr. Kaletta about the incident and placed a note about the incident in his personnel file.

44. Mr. Kaletta remains a manager at the Chicopee Store.

45. No other action was taken against Mr. Kaletta, Mr. Rankin or Mr. Ingalls.

46. Defendant regularly terminates employees upon discovering offenses that are far less severe than the physically threatening and racially motivated actions taken by Mr. Kaletta, Mr. Rankin or Mr. Ingalls against Mr. Rosemond.

47. As a result of the noose incident, Mr. Rosemond suffered severe anxiety and depression and sought treatment from his doctor.

48. Although Mr. Rosemond wants to return to work, he has been unable to return to work due to the anxiety and depression caused by the noose incident and the Defendant's failure to remove from the workplace the employees who engaged in this racially motivated threat.

## COUNT I – RACE DISCRIMINATION
## 42 U.S.C. § 2000e et seq.

49 Paragraphs 1 through 48 are repeated, reiterated and re-alleged as if fully set forth herein.

50. The Defendant, by the above-described conduct, discriminated against Mr. Rosemond based on his race in violation of 42 U.S.C. § 2000e et seq.

51. As a direct and proximate result of such conduct, Mr. Rosemond has suffered, and continues to suffer, from damages including a loss of pay and benefits, damages resulting from emotional distress and attorneys' fees.

## COUNT II – RACIAL HARASSMENT
## 42 U.S.C. § 2000e et seq.

52. Paragraphs 1 through 51 are repeated, reiterated and re-alleged as if fully set forth herein.

4

53. The Defendant, by the above described conduct, subjected Mr. Rosemond to racial harassment, in violation of 42 U.S.C. § 2000e et seq.

54. As a direct and proximate result of such conduct, Mr. Rosemond has suffered, and continues to suffer, from damages including a loss of pay and benefits, damages resulting from emotional distress and attorneys' fees.

## COUNT III – RACE DISCRIMINATION
## Mass. Gen. Laws ch. 151B

55. Paragraphs 1 through 54 are repeated, reiterated and re-alleged as if fully set forth herein.

56. The Defendant, by the above-described conduct, discriminated against Mr. Rosemond based on his race in violation of Massachusetts General Laws ch. 151B.

57. As a direct and proximate result of such conduct, Mr. Rosemond has suffered, and continues to suffer, from damages including a loss of pay and benefits, damages resulting from emotional distress and attorneys' fees.

## COUNT IV – RACIAL HARASSMENT
## Mass. Gen. Laws ch. 151B

58. Paragraphs 1 through 57 are repeated, reiterated and re-alleged as if fully set forth herein.

59. The Defendant, by the above described conduct, subjected Mr. Rosemond to racial harassment, in violation of Mass. Gen. Laws ch. 151B.

60. As a direct and proximate result of such conduct, Mr. Rosemond has suffered, and continues to suffer, from damages including a loss of pay and benefits, damages resulting from emotional distress and attorneys' fees.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

WHEREFORE, the Plaintiff, Joseph Rosemond, respectfully requests:

(a) That judgment enter in his favor on each count;

(b) Damages be assessed against the Defendant under each count of the Complaint, including, but not limited to, loss of pay and damages resulting

from emotional distress;

(c) Multiple or punitive damages;

(d) His attorneys' fees;

(e) Interest and costs; and

(f) For such other relief as this Court deems just and appropriate.

Respectfully submitted,
Plaintiff, Joseph Rosemond,
By His Attorney,


_____
Tani E. Sapirstein
BBO #236850
SAPIRSTEIN & SAPIRSTEIN, P.C.
1341 Main Street - 3rd Floor
Springfield, MA 01103
Tel:  (413) 827-7500
Fax:  (413) 827-7797

Date: April 7, 2004

J:\WP61\CASEFILE\ROSEMOND\Complaint.wpd

6