**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**Civil Action No. 04-30072-MAP**

| | |
|---|---|
| JOSEPH ROSEMOND, | ) |
| **Plaintiff** | ) |
| | ) |
| v. | ) |
| | ) |
| STOP AND SHOP SUPERMARKET | ) |
| COMPANY, | ) |
| **Defendant** | ) |

**PLAINTIFF'S SURREPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.    **Mr. Rosemond's Version of the Facts is Credible.**[1]

A large portion of Defendant's Reply is devoted to Defendant's attempts to recharacterize certain evidence in a light more favorable to the Defendant. In doing so, the Defendant ignores the well-established standard at summary judgment that facts should be viewed in the light most favorable to the non-moving party, Mr. Rosemond. "[A]part from that which may be inherently incredible, the non-moving party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in [the evidence] resolved favorably to him. . . ." Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 934 (1st Cir. 1987), quoting Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).

Mr. Rosemond's characterizations of the evidence are far from incredible. A reasonable juror could conclude that a noose was hung in Mr. Rosemond's office. See

---

[1]The majority of factual disputes raised in Defendant's Reply have already been addressed by the parties. Mr. Rosemond does not wish to overburden the Court with a lengthy and redundant recitation of his version of the facts. Therefore, Mr. Rosemond will attempt to keep his factual analysis brief and rely mainly on his recitation of the facts in his Opposition to Defendant's Motion for Summary Judgment. As the parties have each raised factual disputes, summary judgment is not appropriate in this matter.

Plaintiff's Statement of Facts in Dispute, paragraphs 2 - 4. A reasonable juror also could conclude that Stanley Kaletta, a supervisory employee of the Defendant, saw the hanging of the noose in the office of an African American man and recognized that it was a racist symbol. See Plaintiff's Statement of Facts in Dispute, paragraphs 21, 24-25, 28-29. Defendant's insistence that Mr. Kaletta did not recognize that the noose was a racist symbol seems far more incredible. Additionally, a reasonable juror could conclude that by leaving the noose hanging in Mr. Rosemond's office, failing to take any corrective action for conduct which he witnessed, making no attempt to stop the harassment, and failing to report the incident to any other member of management, Mr. Kaletta failed to take prompt and effective remedial action. Furthermore, a reasonable juror could conclude that Defendant's disciplinary response, and in certain cases the lack thereof, to the hanging of a noose in an African American man's office was insufficient to be appropriate remedial action. See Plaintiff's Statement of Facts in Dispute, paragraphs 35-36, 38, 45-47. This conclusion would be reasonable for the many reasons stated in Mr. Rosemond's Opposition, including the fact that Defendant ignored the recommendation of the African American decision-maker to terminate the employees. See Plaintiff's Statement of Facts in Dispute, paragraphs 28, 35. This conclusion would be further supported by the evidence that Defendant's disciplinary response in this situation was far more lenient than Defendant's typical disciplinary response, as described by Defendant's own management employees. See Plaintiff's Statement of Facts in Dispute, paragraph 36.

## II.    A Hanging Noose in an African American's Office is Severe and Pervasive

Defendant asserts that "there is no federal or state case law that supports the idea that this incident, which did not involve violence or even a threat of violence toward Rosemond, is sufficient to satisfy the severe or pervasive standard." See Defendant's Reply Memorandum, pp. 3 - 4. As an initial matter, a reasonable juror could conclude that hanging a noose in an African American man's workspace does amount to a threat of violence. See Plaintiff's Statement of Facts in Dispute, paragraphs 28, 29. As noted in Mr. Rosemond's Opposition to Defendant's Motion for Summary Judgment ("Opposition"), several courts have indicated that such racial harassment often amounts to threats of

2

violence for African Americans.[2]  See Williams v. New York City Hous. Auth., 154 F. Supp. 2d 820, 824 (S.D.N.Y. 2001); Vance v. Southern Bell Telephone & Telegraph Co., 863 F.2d 1503, 1511 (11th Cir.1989); Harris v. Int'l Paper Co., 765 F. Supp. 1509, 1516 (D. Me. 1991).  Mr. Rosemond's Opposition included a thorough analysis of several cases which involved similar harassing conduct. For instance, the Williams case involved a noose that was observed by the plaintiff in a display case in a supervisor's office.  The noose in the Williams case was not explicitly directed at the plaintiff or hung in the plaintiff's workspace. Nevertheless, the Williams Court held that "Defendant's contention, however that the display of a noose by a white supervisor in his office could not, as a matter of law, sufficiently 'alter the conditions of employment' for an African-American employee is naive and untenable." See Williams, 154 F. Supp. 2d at 826. Furthermore, the Massachusetts Commission Against Discrimination ("MCAD") recently held that one incident of racial harassment, which did not involve any threat of violence, was sufficiently severe or pervasive.[3]  In Mass. Comm'n Against Discrimination v. Aramark Corp., 2004 WL 1920884 (MCAD 2004), a copy of which is attached hereto for the convenience of the Court, a supervisory  employee, who did not have any actual authority over the complainant, referred to the complainant with two offensive racial epithets in front of a crowd of people in a public venue. The Full Commission upheld the Hearing Officer's conclusion that this one incident of racial harassment was sufficiently severe or pervasive to alter the terms and conditions of the complainant's employment. Additionally, the Full Commission noted that, in light of the harassment suffered by the complainant, it was "disturbed" that the Hearing Officer had only awarded $35,000.00 in emotional distress damages.  These cases, and the others described in Mr. Rosemond's Opposition, indicate that it is reasonable to conclude that an African American would find that the racial harassment suffered by Mr. Rosemond, *id est* finding a noose hanging in his workspace, was

---

[2]Several of Defendant's employees were seriously disturbed by the incident. See Plaintiff's Statement of Facts in Dispute, paragraph 28.

[3]The Supreme Judicial Court has noted that the MCAD's interpretations of Massachusetts General Laws Chapter 151B should be accorded deference. See College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 165 (1987)(citations omitted).

sufficiently severe or pervasive to create a hostile working environment.

## III.    Stop and Shop Should Be Held Liable for Kaletta's Actions

The Massachusetts Supreme Judicial Court has concluded that the Massachusetts Legislature "intended that an employer be liable for discrimination committed by those on whom it confers authority." College-Town, Division of Interco, Inc. v. Massachusetts Comm'n Against Discrimination, 400 Mass. 156, 165, 508 N.E.2d 587 (1987). Additionally, the Supreme Judicial Court has indicated that employers "would be liable for a supervisor who fails to remedy or report coworker harassment." See Id. at 167, 508 N.E.2d 587. Similarly, the First Circuit has noted that employer liability may attach "if information of the harassment had come to the attention of someone who is reasonably believed to have a duty to pass on the information." See Crowley v. L.L. Bean, Inc., 303 F.3d 387, 402-403 (1st Cir. 2002), citing Sims v. Health Midwest Physician Servs. Corp., 196 F.3d 915, 920-921 (8th Cir.1999). Despite Defendant's attempts to confuse the legal analysis in its lengthy Reply, applying these legal principles to the facts of this case is not complicated.

Mr. Kaletta was a supervisory employee of the Defendant. Defendant entrusted Mr. Kaletta with the authority to direct the day-to-day activities of Charles Ingalls and Jeramie Rankin.[4] See Plaintiff's Statement of Facts in Dispute, paragraph 24, n.8. Additionally, as a Meat Department Manager, Mr. Kaletta was expected to communicate any information about unlawful harassment.  See Defendant's Exhibit F.  Although Mr. Kaletta was a supervisory employee and expected to pass on any information about unlawful harassment, Mr. Kaletta did not reprimand his subordinates or express disapproval, take down the noose, report the incident, or take any other corrective action to stop the harassment. See Plaintiff's Statement of Facts in Dispute, paragraph 24.  If Mr. Kaletta

---

[4]The authority to hire and fire employees is not a requirement for supervisory employees under either Massachusetts or Federal law. See Mr. Rosemond's Opposition, p. 17; MCAD Guidelines on Sexual Harassment, Section III(B); Mass. Comm'n Against Discrim. v. Aramark, 2004 WL 1920884 (MCAD 2004), citing Williams v. Karl Storz Endovision, Inc., 24 MDLR 91 (2002), citing Fluet v. Harvard University, 23 MDLR 145, 163 (2001) ("An individual who is authorized to direct another employee's day-to-day activities qualifies as a supervisor even if that individual does not have the authority to undertake or recommend tangible job decisions.' EEOC Enforcement Guidance, Vicarious Employer Liability for Unlawful Harassment by Supervisors, No. 915.002 (June 18, 1999)"); Crowley, 303 F.3d at 403.

had responded appropriately to the noose, Mr. Rosemond would have been spared the trauma of finding a noose hanging in his office. As a result of Mr. Kaletta's inaction and complicit approval of his subordinates' behavior, Mr. Rosemond, an African American, arrived at work to find a noose hanging in his office. See Plaintiff's Statement of Facts in Dispute, paragraph 2.

Defendant cited to two opinions in support of its position that Mr. Kaletta's lack of supervisory authority over Mr. Rosemond prevents Defendant from being liable for his actions. Both of these decisions are inapplicable to the facts in this case. In Johnson v. Boston Edison Co., 19 MDLR 162, 1997 Mass. Comm. Discrim. LEXIS 42 (1997), the harassment consisted of obscene telephone calls to the plaintiff's home. The harassing employee did not work in the same city as the complainant, rarely saw the complainant, and did not have any influence over her work environment. Furthermore, the harassing employee had no supervisory authority at all when he engaged in the majority of the harassment. By contrast, Mr. Kaletta was a supervisory employee in Mr. Rosemond's store. He had authority over the two subordinates who hung the noose in Mr. Rosemond's office. Mr. Kaletta had the authority and responsibility to take remedial action after seeing the noose hanging in Mr. Rosemond's office. Nevertheless, Mr. Kaletta chose not to take any action to stop the harassment or even express dissatisfaction with his subordinates' behavior. In Saad v. Stanley Street Treatment and Resources, Inc., 1994 U.S. Dist. LEXIS 20728 (D. Mass. 1994, Woodlock, J.), the harassing employee was a co-worker of the plaintiff. His supervisory role was not relevant in any way to his harassing behavior. The Court in Saad specifically noted that the harassing employee was "not acting in [his] supervisory role when dealing with another employee." Saad v. Stanley Street Treatment and Resources, Inc., 1994 U.S. Dist. LEXIS 20728, at *23. Mr. Kaletta observed two of his subordinates engaging in the racial harassment before Mr. Rosemond was subjected to it. He had the authority, opportunity and responsibility to stop the harassment, but chose not to do so.

Mr. Kaletta was a supervisory employee with authority and responsibility to respond to the racial harassment perpetrated by his subordinates. He observed his subordinates behaving in a racially harassing manner and made the decision to let the

5

behavior continue undeterred. Rather than using his supervisory authority to prevent and correct harassment, Mr. Kaletta, through his tacit approval of his subordinates' behavior, manifested a policy of indifference toward racial harassment to all of the subordinate employees in Mr. Rosemond's store who observed his reaction.[5]

## IV.    Conclusion

For the foregoing reasons and the reasons set forth in Plaintiff's Opposition to Defendant's Motion for Summary Judgment, the Plaintiff, Joseph Rosemond, respectfully requests that the Defendant's Motion for Summary Judgment be denied.

Respectfully submitted,
The Plaintiff, Joseph Rosemond,
By His Attorney,


Tani E. Sapirstein, Esq.
BBO #236850
SAPIRSTEIN & SAPIRSTEIN, P.C.
1341 Main Street - 3rd Floor
Springfield, MA 01103
Tel:    (413)  827-7500
Fax:    (413)  827-7797

Date:  September 1, 2005

---

[5] As noted in Mr. Rosemond's Opposition, the MCAD has indicated that "[i]n some circumstances, an employer may be liable for the actions of a supervisor, even if that supervisor does not have direct supervisory authority over the Complainant." See MCAD Guidelines on Sexual Harassment, Section III(B). In an apparent attempt to confuse this issue and to find support for its position, Defendant follows its discussion of this section of the MCAD Guidelines with quotations from the section of the Guidelines which applies to an employer's liability for non-supervisory employees. See Defendant's Reply, p. 5. Because Mr. Kaletta was a supervisor with actual authority over Mr. Ingalls and Mr. Rankin, the portions of the Guidelines dealing with non-supervisory employees are irrelevant to the analysis of Defendant's liability for Mr. Kaletta's actions. Mr. Rosemond submits that this is one of the circumstances when an employer should be held liable for its supervisor's conduct, regardless of his authority over the victim of the harassment.

6

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document was served upon the following, via first class mail, postage prepaid, to:

> Lisa J. Damon, Esq.
> Yvette Politis, Esq
> Brigitte Duffy, Esq.
> Seyfarth Shaw LLP
> World Trade Center East
> Two Seaport Lane, Suite 300
> Boston, MA 02210-2028

Date: September 1, 2005

Tani E. Sapirstein

K:\WP61\CASEFILE\ROSEMOND\Notes Surreply.wpd

7

Westlaw.

2004 WL 1920884 (MCAD)
**(Cite as: 2004 WL 1920884 (MCAD))**

Massachusetts Commission Against Discrimination
*1 MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION AND JAMES BLUE,
COMPLAINANT
v.
ARAMARK CORPORATION, RESPONDENT
Docket No. 98-BEM-1796
August 20, 2004

DECISION OF THE FULL COMMISSION

This matter comes before us following a decision of Hearing Officer Judith E. Kaplan in favor of Complainant, James Blue. Following an evidentiary hearing, the Hearing Officer concluded that Respondent was liable for unlawful discrimination and harassment on the basis of race in violation of M.G.L. c. 151B, section 4(1). Respondent filed an appeal to the Full Commission.

The responsibilities of the Full Commission are outlined by statute, the Commission's Rules of Procedure (804 CMR 1.00 et. seq.), and relevant case law. It is the duty of the Full Commission to review the record of proceedings before the Hearing Officer. M.G.L. c. 151B, section 5. The Hearing Officer's findings of fact must be supported by substantial evidence, which is defined as "....such evidence as a reasonable mind might accept as adequate to support a finding...." Katz v. MCAD, 365 Mass. 357, 365 (1974); M.G.L. c. 30A.

It is the Hearing Officer's responsibility to evaluate the credibility of witnesses and/or to weigh the evidence when deciding disputed issues of fact. The Full Commission defers to these determinations of the Hearing Officer. See, e.g., School Committee of Chicopee v. MCAD, 361 Mass. 352 (1972); Bowen v. Colonnade Hotel, 4 MDLR 1007, 1011 (1982). The Full Commission's role is to determine whether the decision under appeal was rendered in accordance with the law, or whether the decision was arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law. See 804 CMR 1.16(f).

I. RESPONDENT'S PETITION FOR REVIEW

Respondent first contends on appeal that there is insufficient evidence to support the Hearing Officer's finding that Complainant reasonably believed Floyd Eighmey was his **supervisor** and, therefore, the Hearing Officer erred as a matter of law when she held Respondent strictly liable for Eighmey's **harassing** and discriminatory conduct toward Complainant. In support of its contention, Respondent states that there was uncontroverted evidence at the hearing that Eighmey worked in a different department from Complainant and that he had no actual **authority** to hire or fire Complainant. The Hearing Officer specifically found that "although Eighmey worked in a different department and was not in Complainant's direct chain of command, Eighmey was a **supervisory** employee, and was directed by Lyons to find Complainant on that particular occasion.... Complainant recognized Eighmey as a **supervisory** employee, and reasonably believed that Eighmey had **authority** to direct his work." Respondent states that in making this finding, the Hearing Officer misunderstood the law, specifically Johnson v. Plastic Packaging, Inc. 892 F. Supp. 25 (D. Mass. 1995), and made a ""novel assertion that an employer is strictly liable for the discriminatory

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1920884 (MCAD)
(Cite as: 2004 WL 1920884 (MCAD))

conduct of a **supervisor** who has no actual or apparent **authority over** an employee."

**\*2** We disagree. The Hearing Officer clearly made a finding of apparent **authority** in this case. This case, as well as Johnson, involved an employee who was **harassed** by a departmental **supervisor** who worked in a different department, was in a different chain of command, and had no direct **supervisory** relationship to the complainant. The evidence in this case, as in Johnson, established that even though the **harassing supervisor** was not Complainant's direct **supervisor**, Complainant had ample reason to believe this **supervisor** had sufficient **authority** and power to order him to perform certain tasks and to have him fired. Eighmey, a floor **supervisor** who was responsible for keeping the stadium clean, was directed by Lyons, Respondent's general manager, to find Complainant and direct him to clean one of the stadium's concourses. Indeed, Eighmey, acting upon the **authority** conferred upon him by Lyons, found Complainant, directed him to clean the concourse, threatened to have him fired, and took steps to carry out on his threat.

We are not persuaded by Respondent's attempt to distinguish Johnson on the ground that the supervisor in Johnson actually did have the power to fire the complainant, whereas in this matter Eighmey did not actually have such power. An employer can be held strictly liable where Complainant is "a rank-and-file employee, and clearly subordinate in the corporate hierarchy to the individual defendants who were all management personnel and supervisory employees." Morehouse v. Berkshire Gas Co., 989 F. Supp. 54 (D. Mass. 1997). An employee may be classified as a supervisor if that individual "is authorized to direct another employee's day-to-day activities." Williams v. Karl Storz Endovision, Inc., 24 MDLR 91 (2002), citing Fluet v. Harvard University, 23 MDLR 145, 163 (2001). In this matter, Eighmey was authorized by Lyons, the general manager, to direct Complainant to clean the concourse, one of his major day-to-day activities. "An individual who is authorized to direct another employee's day-to-day activities qualifies as a **supervisor** even if that individual does not have the **authority** to undertake or recommend tangible job decisions." EEOC Enforcement Guidance, Vicarious Employer Liability for Unlawful **Harassment** by **Supervisors**, No. 915.002 (June 18, 1999). Thus, we conclude that the Hearing Officer's conclusion in this regard is consistent with the governing law.

Second, Respondent contends that the Hearing Officer erred as a matter of law in finding that Eighmey's conduct was sufficiently severe or pervasive to alter the terms and conditions of Complainant's employment. Respondent makes this argument despite acknowledging that one incident may be sufficiently severe to constitute unlawful **harassment**. See Gnerre v. MCAD, 402 Mass. 502 (1988)(declining to impose a numerosity requirement in **harassment** cases).

In this case, the Hearing Officer made extensive findings to support her conclusion that the conduct was severe. She found that Eighmey angrily called Complainant a "black motherfucker" and a "nigger" in front of a crowd of fans in a public venue. He then threatened to have Complainant fired and actively took steps to accomplish this end. Complainant cried uncontrollably in front of numerous fans after the incident. The Hearing Officer, while acknowledging that "there was only one incident of name calling," nevertheless found that ""under the circumstances of this case, where a **supervisory** employee referred to Complainant as a 'nigger' and a 'black motherfucker,' in a public forum with fans all around, that this was particularly demeaning and embarrassing."

**\*3** In finding the one incident "sufficiently egregious to constitute racial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1920884 (MCAD)
[Cite as: 2004 WL 1920884 (MCAD))

**harassment,**" the Hearing Officer also noted that the Supreme Judicial Court has stated that the more offensive the comments, the fewer incidents of **harassment** may be required to establish the objective reasonableness of the claim at hand. Gnerre, supra at 507. Finally, this Commission has routinely recognized that ""the foundation of **harassment** law rests on the nature and effect of the **harassing** conduct, not the number of occurrences. As such, a hearing officer may conclude that one incident is sufficient to create a hostile work environment in violation of c.151B." E.g., McCreath v. Elite Protective Services, 25 MDLR 337, 338 (2003). We, therefore, find that the Hearing Officer did not err as a matter of law in concluding that Eighmey's conduct was sufficiently severe to alter the terms and conditions of Complainant's employment.

Finally, Respondent contends that the Hearing Officer's decision to credit Complainant's testimony regarding Eighmey's offensive utterances was not supported by substantial evidence. Specifically, Respondent argues that the Hearing Officer's credibility determinations are legally insufficient because she declined to credit certain portions of Complainant's testimony but affirmatively credited others. Respondent states that the Hearing Officer's decision provided no means of analyzing her assessment of credibility and, therefore, leaves a reviewing body no alternative but to speculate as to the basis for her conclusions.

We disagree. The Hearing Officer acknowledged in her decision that she was ""mindful of the Complainant's lack of consistency and credibility with respect to other aspects of his testimony," namely his account of what happened to the piece of paper he claimed to have been given by a fan who wrote down a telephone number and offered to appear as a witness. However, the Hearing Officer specifically found that "Complainant has been consistent regarding the central allegation in this matter: that Eighmey spoke the offensive terms." Further, the Hearing Officer credited corroborating evidence to support Complainant's claim. It is the Hearing Officer's discretion to make credibility determinations, and such determinations are not limited to all-or-nothing assessments of witness testimony.

We are not convinced that the Hearing Officer's reservations about Complainant's testimony concerning the piece of paper's whereabouts detract fatally from her well-supported conclusions concerning Complainant's central allegation in this matter. "An agency adjudicator does not have to make detailed findings concerning every aspect of the matter before [her]; [her] findings need only embrace those facts necessary to support [her] decision in sufficient detail to permit judicial review." Chief Justice for Administration of the Trial Court, et al. v. MCAD, 439 Mass. 729, 735 (2003). Contrary to Respondent's contention in this regard, we believe the Hearing Officer's decision sufficiently provided a means of analyzing her assessment of credibility and provided a reviewing body sufficient alternatives beyond mere ""speculation" as to the basis for her conclusions.

**\*4** We have carefully reviewed Respondent's contentions on appeal and the full record in this matter and have weighed all the objections to the decision in accordance with the standard of review herein. As a result of that review, we find no material errors of fact or law with respect to the Hearing Officer's finding of race discrimination and harassment. We find the Hearing Officer's conclusions were supported by substantial evidence in the record and we defer to them.

Our decision would not be complete without one final comment upon the award of emotional distress damages in this case. We were disturbed to find upon review of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1920884 (MCAD)
Cite as: 2004 WL 1920884 (MCAD))

the decision below that the Hearing Officer elected to award only $35,000 to the Complainant in emotional distress damages for what appeared to be severe emotional distress. Given the facts found, this award seems to be at the low end of the spectrum of appropriateness. Complainant was humiliated and demeaned in front of a large crowd of people with some of the most hateful and offensive epithets in the English language. Complainant was so upset by this discriminatory conduct that he broke down crying in public while describing the incident to his manager ten minutes later. He broke down again ten days later when trying to recount the events to Respondent's general manager and testified that the event evoked painful memories of discrimination he had suffered while growing up in the South. Given the nature, character and severity of the harm Complainant suffered, we feel that a significantly larger award was warranted. See Stonehill College v. MCAD, 441 Mass. 549 (2004).

However, Complainant did not appeal the finding and we defer to the Hearing Officer's award in this matter. As we stated in Said v. Northeast Security, Inc., "a judge has no right to set aside a verdict merely because he himself would have assessed the damages in a different amount." Said v. Northeast Security, Inc., 23 MDLR 124, 125 (2001). Despite our misgivings, we find that there was substantial evidence in the record with respect to the award of emotional distress and therefore we will not disturb the award. [FN1]

On the above grounds, we deny the appeal and affirm the Hearing Officer's decision in its entirety.

II. COMPLAINANT'S PETITION FOR ATTORNEYS' FEES AND COSTS

Having affirmed the Hearing Officer's decision, we conclude that Complainant prevailed on one of his claims in this matter and is entitled to an award of reasonable attorneys' fees and costs. See M.G.L. c. 151B, Section 5. Complainant has filed a petition seeking attorneys' fees and expenses, supported by detailed contemporaneous time records, requesting fees in the amount of $112,750.00 and costs in the amount of $1,133.48. Respondent has filed an opposition thereto.

A. FEES

M.G.L. Chapter 151B allows prevailing complainants to recover attorneys' fees. However, the Commission has held that when a Complainant does not prevail on certain aspects of his case, his request for attorneys' fees must be reduced to reflect the partial success. Aubourg v. American Drug Stores, 23 MDLR 226 (2001); Carmichael v. Wynn & Wynn, 18 MDLR 208 (1996). The Commission may exercise its discretion to reduce the overall fees requested by some amount that may reasonably be said to have been expended in pursuit of Complainant's unsuccessful claim. In making such a determination, we may examine the "degree of interconnectedness" between the two claims. In this case, Complainant's claim of racial harassment and his claim of retaliation shared some common relevant facts, such as those having to do with the incident that occurred on May 23, 1998. However, the claims do not require the same factual elements to establish a prima facie case for each and the allegations related to events occurring when Complainant was employed by Respondent during 1999, 2000 and 2001 seasons are not sufficiently linked to the harassment claim so as to compel a finding of sufficient "interconnectedness." Thus, we find that a 35% reduction in Complainant's requested reimbursement is fair and reasonable under the circumstances of this case.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1920884 (MCAD)
(Cite as: 2004 WL 1920884 (MCAD))

*5 The determination of whether a fee sought is reasonable is subject to the Commission's discretion. The Commission has adopted the lodestar methodology for fee computation. By this method, the Commission will first calculate the number of hours reasonably expended to litigate the claim and multiply that number by a reasonable hourly rate. Baker v. Winchester School Committee, 14 MDLR 1097 (1992).

Only those hours that are reasonably expended are subject to compensation under M.G.L. c.151B. In determining whether hours are compensable, the Commission will consider contemporaneous time records maintained by counsel and will review both the hours expended and tasks involved. Id. at 1099.

Complainant has filed a Petition seeking attorneys' fees for a total of 496.65 hours. This total represents work performed by six attorneys, two paralegals and two legal interns. Complainant's Petition is accompanied by detailed contemporaneous time records. Having reviewed the contemporaneous time records that support this request, we conclude that the amount of time spent on preparation and litigation of this claim is reasonable. Our review points to no evidence that the hours spent were duplicative, unproductive, excessive or otherwise unnecessary to the prosecution of the claim. Furthermore, all hours for work performed are sufficiently documented. We also conclude that the hours for which reimbursement is sought is reasonable. We also conclude that the expertise of Attorneys Prince, Rubin, Taylor, Knuuttila, Edwards and Caputo in the area of employment discrimination law was supported by accurate documentation. We conclude that the hourly rates charged by these attorneys, which ranged from $175.00 to $400.00 over the time period 1998 to 2003, are consistent with rates customarily charged by attorneys with comparable experience and expertise in such cases and are well within the range of rates charged by attorneys in Boston of similar experience.

As stated above, we conclude that the reimbursement for attorneys' fees is reasonable, but the amount sought is nonetheless subject to a reduction of 35% due to Complainant's failure to prevail on his retaliation claim. We therefore award attorneys' fees in the amount of $73,287.50.

Complainant's counsel also seeks reimbursement for costs in the amount of $1,133.48. These costs include expenses related to the taking of depositions in this matter, photocopies, and postage. We find that these costs are adequately documented and reasonable. Accordingly, we award them to Complainant.

On April 15, 2004, Complainant filed a Supplemental Fee Petition seeking fees associated with this appeal and those incurred in preparing fee petitions. Having reviewed this Petition, we find that the fees incurred with respect to opposing Respondent's appeal were reasonable and make a supplemental award of $17,943.00 for a total of $91,230.50. However, we decline to award recovery of fees for preparation of the fee petitions. We also award additional documented costs of $442.17, for a total of $1,580.65.

ORDER

*6 Respondent's appeal to the Full Commission is hereby dismissed and the decision of the Hearing Officer, including the award for emotional distress, is affirmed in its entirety. Respondent's request for oral argument is denied. It is hereby ordered that:
    (1) Respondent immediately cease and desist discriminating on the basis of race

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 1920884 (MCAD)
(Cite as: 2004 WL 1920884 (MCAD))

and color.
   (2) Respondent pay to Complainant the sum of $35,000.00 in damages for emotional
distress with interest, thereon at the statutory rate of 12% per annum from the date
the complaint was filed, until such time as payment is made or until this order is
reduced to a court judgment and post-judgment interest begins to accrue. Payment
shall be made within sixty (60) days of receipt of this decision.
   (3) Respondent pay to Complainant the sum of $91,230.50 in attorneys' fees and
$1,580.65 in costs. Payment shall be made within sixty (60) days of receipt of this
decision.
   (4) The Parties shall notify the Clerk of the Commission as soon as the ordered
payments have been made.

 This order represents the final action of the Commission for purposes of M.G.L.
c.30A. Failure to comply with this order will result in the Commission's initiation
of enforcement proceedings, pursuant to 804 CMR 1.25, which may subject the
noncomplying party to both civil and criminal penalties as provided in M.G.L.
c.151B, s.8.

 Any party aggrieved by this final determination may contest the Commission's
decision by filing a complaint in superior court seeking judicial review within
thirty (30) days of receipt of this decision in accordance with M.G.L. c.30A,
c.151B, s.6, and the 1996 Standing Order on Judicial Review of Agency Actions. The
filing of a petition pursuant to M.G.L. c.30A does not automatically stay
enforcement of this order. Failure to file a petition in court within thirty (30)
days of receipt of this order will constitute a waiver of the aggrieved party's
right to appeal pursuant to M.G.L. c.151B, s.6.

 SO ORDERED this 20th day of August, 2004.

Walter J. Sullivan, Jr., Commissioner

Cynthia A. Tucker, Commissioner

FN1. We note that on June 14, 2004, several months after the filing of its petition,
Respondent filed a Motion to Set Aside Emotional Distress Damage Award and for Order
Precluding Award of Attorneys' Fees and Expenses. We deny this motion as untimely.
Respondent did not contest the Hearing Officer's emotional distress award in its
original petition. Furthermore, the Supreme Judicial Court's ruling in Stonehill
College did not change the law with respect to the determination of an emotional
distress award other than to prospectively eliminate the inference of emotional
distress that previously attached to a finding of liability. However, in this case,
the Hearing Officer did not rely on that inference, rather she based her award on
the evidence of distress set forth by Complainant. Furthermore, although the Hearing
Officer did not have the benefit of the Stonehill College decision when considering
Complainant's claim, her findings of fact and conclusions of law demonstrate that
she took into consideration the factors articulated in Stonehill College, factors
which the Commission has for years employed, in reaching her determination with
respect to the award of emotional distress damages.

 2004 WL 1920884 (MCAD)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.