UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSEPH ROSEMOND, )<br>    )<br>    Plaintiff, )<br>    )<br>v.  ) <br>    )<br>STOP AND SHOP SUPERMARKET )<br>COMPANY, )<br>    )<br>    Defendant. )<br>    ) | C.A. No. 04-30072-KPN |

**DEFENDANT STOP & SHOP'S OPPOSITION TO PLAINTIFF'S
OBJECTION TO REPORT AND RECOMMENDATION**

**Introduction**

Plaintiff Joseph Rosemond's ("Rosemond" or "Plaintiff") objects to the Report and Recommendation ("Report") of the Magistrate Judge insofar as it found that Stop & Shop could not be held strictly liable under c. 151B for the failure of non-exempt, unionized meat manager Stanley Kaletta to remedy or report the misconduct of Ingalls and Rankin. Plaintiff contends that the Report mischaracterizes his argument in support of finding that strict liability should apply. Specifically, Rosemond states:

> It is not the position of the Plaintiff that Kaletta's role as <u>a</u> supervisor should result in liability *per se* of the Defendant, rather it is Kaletta's role as the supervisor of the perpetrators <u>and</u> his failure to remedy and report the conduct that should result in the strict liability of the Defendant.

(Emphasis in original.) Pl. Objection, at 2-3. The Court should reject Plaintiff's argument because no Massachusetts case, including the cases cited by Plaintiff in his objection, supports the notion that strict liability may attach under the factual circumstances he describes. In fact,

Plaintiff's position, if adopted, would simply render meaningless the legal distinction between coworker and supervisory harassment because he is suggesting that Stop & Shop should be held strictly liable because Kaletta knew of the harassing conduct and failed to remedy it – the precise elements for assessing coworker harassment liability. In short, because there is simply no legal authority that supports imposing strict liability for a lower-level employee's failure to remedy harassing conduct allegedly targeted at an higher-level supervisor, Rosemond's argument fails.

**Argument**

Throughout his objection, Plaintiff cites cases that are factually distinguishable and offers quotes from them that are taken out of context. Ultimately, they fail to support his argument. A review of the legal authority on which he purports to rely reveals that these cases suggest nothing more than what the Report found: c. 151B imposes (1) strict liability on employers for harassment by supervisors of subordinate employees and (2) liability on employers for a coworker's harassment only if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

First, Plaintiff inaccurately contends that his argument is supported both by the Supreme Judicial Court's ("SJC") decision in College-Town, Division of Interco, Inc. v. Massachusetts Commission Against Discrimination, 400 Mass. 156, 165, 508 N.E. 2d 587 (1987), and the Massachusetts Commission Against Discrimination's ("MCAD") decision in Aldridge v. Thomas O'Connor Construction, Inc., 2004 WL 1237353 (MCAD 2004), which he attached to his objection. He misleadingly quotes from College-Town and, in any event, the statement he quotes does not support his assertion that the SJC has suggested that an employer should be strictly liable when a supervisor fails to report and/or remedy a coworker's harassing conduct. The Aldridge case is simply inapposite.

Taking a single sentence from College-Town out of the context in which it was written, Plaintiff argues that the SJC "has implied that an employer should be held strictly liable if a supervisor fails to remedy or report coworker harassment." (Emphasis in original.) Pl. Objection, at 2. In particular, Plaintiff quoted the following: "We see no reason why an employer should be liable for a supervisor who fails to remedy or report coworker harassment, but not for the supervisor's own harassment of subordinates." College-Town, 400 Mass. at 167. On its face, this quote does not support Rosemond's assertion. This statement does not suggest that an employer is *strictly liable* when a supervisor fails to remedy or report coworker harassment – just that it *may* be liable for that failure if it knew of the conduct and failed to address it promptly and appropriately. Moreover, all this sentence suggests is that it would be inconsistent for an employer to be liable for coworker harassment, but not liable for a supervisor's harassment.

Placing the statement in the context in which it was made further undercuts Rosemond's argument. The SJC made this comment not to suggest that the same standard of imposing liability be applied, but in response to the defendant's argument that it could only be liable for a supervisor's harassment of a lower-level employee if the discriminatory acts occurred in the course of exercising supervisory powers. Id. The SJC pointed out that under the employer's theory,

> if the harassment . . . had been committed by someone other than [the plaintiff's supervisor] and [she] had informed [the supervisor] of the situation, College-Town *would thereby have been notified, and would have had an affirmative obligation to remedy the situation*. At the same time College-Town argues that it should not be vicariously liable for sexual harassment committed by [the supervisor] himself.

(Emphasis added.) Id., 167. Moreover, complete review of College-Town reveals there is no basis to impose strict liability absent a supervisor's harassment of employees over whom he or

she has actual or apparent authority. Id. In particular, the SJC emphasized that the rationale underlying strict liability for supervisor harassment is rooted in a supervisor's ability to use his/her power over lower-level employees:

> [H]arassment by a supervisor carries an implied threat that the supervisor will punish resistance *through exercising supervisory powers*, which may range from discharge to assignment of work, particularly exacting scrutiny, or refusal to protect the employee from coworker harassment. . . . Although coworkers or even outsiders may also be capable of creating a sexually harassing environment, *it is the authority conferred upon a supervisor by the employer that makes the supervisor particularly able to force subordinates to submit to sexual harassment*.

(Emphasis added.) Id., at 593. As Stop & Shop pointed out in its motion, because Rosemond was a higher-level employee than Kaletta, Kaletta's conduct, or, more accurately, lack of response, could not give rise to supervisor liability. In short, nothing in the SJC's analysis in College-Town suggests that an employer should be held strictly liable based on a supervisor's knowledge of harassment by others.

In a further effort to support his claim, Rosemond makes the irrelevant argument that the definition of "supervisor" is interpreted more expansively under c. 151B. (Apparently, Plaintiff concedes that under Title VII, Kaletta clearly does not meet the definition of a supervisor.) His focus on this issue is misplaced because regardless of whether Kaletta is a supervisor for purposes of c. 151B, strict liability cannot attach because he did not engage in the harassing conduct. Further, the case Plaintiff cites in support of this proposition – Aldridge v. Thomas O'Connor Constructors, Inc., 2004 WL 1237353 – does not advance his argument. In Aldridge, an employee of a subcontractor on a construction project was racially harassed by the general contractor's superintendent who was responsible for overseeing the job site. Id. The complainant filed an MCAD charge against the general contractor asserting a claim for racial harassment. After a hearing, the MCAD hearing officer found the general contractor liable for

the conduct of its superintendent even though the general contractor was not a joint employer of the complainant.  Nonetheless, the hearing officer found that the general contractor could be held liable for violations of c. 151B committed by the superintendent because he was a supervisor and "served as its chief day-to-day representative" at the worksite.  Id., at *6-*7.  Nothing about the facts or reasoning in Aldridge is relevant to Plaintiff's argument much less supportive of it.  Unlike Kaletta, the superintendent in Aldridge, was the lead management employee responsible for the construction site at which the complainant worked, and, therefore, held a position of power over the complainant.  Moreover, the superintendent harassed the complainant.

Finally, Rosemond inaccurately suggests that a decision of this Court, in Morehouse v. Berkshire Gas Co., 989 F. Supp. 54 (D. Mass. 1997), supports his argument.  Again, Rosemond selectively quotes from this factually distinguishable case.  In Morehouse, the defendant employer argued that it could not be held liable for harassment by supervisory employees of a "rank-and-file" employee whom they did not directly supervise.  Id., at 64.  In rejecting that argument, the Court made the two statements Rosemond quotes.  Rosemond, however, omitted key language from the decision that appears in between those two sentences he quotes.  The complete quote from Morehouse, set forth below, reveals that the Court's decision fails to support Plaintiff's theory that an employer may be held *strictly liable* for a supervisor's failure to report and remedy harassment of a higher-level manager:

> Furthermore, in its interpretation of ch. 151B, § 4, the SJC has concluded that the Massachusetts Legislature "intended that an employer be liable for discrimination committed by those on whom it confers authority." College-Town, Division of Interco, Inc. v. Massachusetts Comm'n Against Discrimination, 400 Mass. 156, 165, 508 N.E.2d 587 (1987).  Under chapter 151B, therefore, an *employer may be liable for sexual harassment by its supervisory personnel and managers particularly when the harassment is directed at a rank and file employee*.  Messina v. Araserve, Inc.,

> 906 F. Supp. 34, 37 (D. Mass. 1995) (citing College Town, 400 Mass. at 165).
>
> Chapter 151B does not require that a supervisor must actually be in the course of exercising his or her authority over a direct subordinate in order to hold the employer liable for that supervisor's harassment of the subordinate employee. See, e.g., Messina, 906 F. Supp. at 37; Johnson v. Plastic Packaging, Inc., 892 F. Supp. 25, 29-30 (D. Mass. 1995).

(Emphasis added.) Morehouse, 989 F. Supp. at 64. In short, review of Morehouse and the two other District Court cases it cites, Messina and Johnson, reveals that they simply address the standard for assessing strict liability on an employer for supervisory harassment of a *lower-level* employee. They fail to support Rosemond's theory that an employer may be held strictly liable for the inaction of a lower-level, non-exempt, unionized supervisor who lacked any authority to discipline the employees who hung the rope. See Messina, 906 F. Supp. at 37-38 (employer may be strictly liable for supervisory employee's harassment of subordinate employee even if supervisor was not plaintiff's direct supervisor); Johnson, 892 F. Supp. at 29-30 (employer may be strictly liable for manager's harassment of subordinate employee where he exercised actual and apparent authority over plaintiff).

In short, Plaintiff's theory for imposing strict liability on Stop & Shop for Kaletta's failure to act when he saw the rope would essentially eliminate the distinction between the standards of liability for supervisor and coworker harassment. That is because, at base, Rosemond is arguing that Stop & Shop should be held strictly liable because Kaletta allegedly knew of the harassment and failed to address it. Accepting Rosemond's argument would conflict directly with the clear and unambiguous standard applied under c. 151B that where coworkers engage in actionable harassment, liability attaches *only if* the employer (1) knew or should have known of the conduct *and* (2) failed to take prompt and appropriate remedial action. Noviello v.

City of Boston, 398 F.3d 76, 95 (1st Cir. 2005). Given the absence of any authority to support this untenable argument, the Report correctly found that strict liability did not apply in this case.

## Conclusion

For the reasons set forth herein, Stop & Shop opposes Plaintiff's objection to that portion of the Report and Recommendation which found that Stop & Shop could not be held strictly liable for racial harassment under c. 151B.

Respectfully submitted,

THE STOP & SHOP SUPERMARKET
COMPANY LLC,

By its attorneys,

/s/ Brigitte M. Duffy
Lisa J. Damon (BBO # 558843)
Brigitte M. Duffy (BBO # 567724)
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
(617) 946-4800

Dated: April 17, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper will be sent to those indicated as not registered participants on April 17, 2006.

/s/ Brigitte Duffy

BO1 15772407.1