UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30072-MAP

| | |
|---|---|
| JOSEPH ROSEMOND,<br>      PLAINTIFF | )<br>)<br>) |
| v. | )<br>) |
| STOP AND SHOP SUPERMARKET COMPANY,<br>      DEFENDANT | )<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
OBJECTIONS TO THE MAGISTRATE'S REPORT**

Pursuant to Magistrate's Rules Rule 3 the Plaintiff, Joseph Rosemond ("Plaintiff" or "Mr. Rosemond") hereby responds to the Defendant, Stop and Shop Supermarket Company's ("Defendant") objections to the Magistrates's Report (the "Report") as follows:

**A.  The Report Properly Concluded That Defendant Knew Or Should Have Known Of The Noose Incident**

The Defendant contends that Stanley Kaletta's ("Kaletta") direct knowledge and observation of his subordinates hanging a noose in an African American's workspace, does not demonstrate that the Defendant "knew or should have known" about the harassment.  First, the Defendant argues that "Kaletta was never confronted with either unambiguously harassing conduct targeted at an individual or a clearly articulated complaint or concern.  At best, Kaletta did nothing to remedy a situation in which he did not suspect racial animus was involved."

As was correctly noted by the Report, a reasonable jury could conclude that the hanging of a noose in an African American's workspace was unambiguous racial harassment.  See Report pp. 13-15.  As the Court aptly expressed in Vance v. Southern

Bell Telephone & Telegraph Co., 863 F.2d 1503 (11th Cir.1989), "[t]he grossness of hanging an object resembling a noose at the work station of a black female is self-evident." Vance, 863 F.2d at 1511.[1] Furthermore, as noted in Mr. Rosemond's Opposition to Defendant's Motion for Summary Judgment, almost every person involved with the noose incident and the investigation thereof, acknowledged the racial implications of a noose. See Deposition of Kathleen Russello dated February 2, 2005, pp. 14-15, 25, ("Russello Dep."); Deposition of Donald Barsolou dated January 5, 2005, pp. 12, 20-21 ("Barsolou Dep."); Deposition of Gerald Bidwell dated December 15, 2004, pp. 28-29 and 31 ("Bidwell Dep."); Deposition of Charles Ingalls dated December 15, 2004, pp. 15-16 ("Ingalls Dep."); Deposition of Jeramie Rankin dated December 9, 2004, p. 24 ("Rankin Dep."); Deposition of Cindy Flannery dated February 2, 2005, p. 62 ("Flannery Dep"). Copies of the relevant pages of these depositions are attached hereto as Exhibits "1", "2", "3", "4", "5" and "6" respectively. Therefore, Defendant's suggestion that Kaletta did not suspect that hanging a noose in Mr. Rosemond's workspace was a racial incident is not credible. A reasonable jury would be entitled to disbelieve this assertion.

Additionally, the Defendant seems to suggest that an employer is entitled to stand by and observe employees unlawfully harassing a co-worker without taking any preventive or corrective action as long as the harassed co-worker has not made a complaint about the harassment. "The law is clear that an employer may not stand by and allow an employee to be subjected to a course of racial and/or sexual harassment by co-workers or supervisors." Torres v. Pisano, 116 F.3d 625, 636-37 (2d Cir. 1997) (internal quotation marks and citations omitted); see also DeGrace v. Rumsfeld, 614

---

[1] Of the many cases involving nooses from all over the United States which have been cited by Defendant, there is not a single case where the Court held that the hanging of a noose was not a racially motivated action. See Ford v. West, 222 F.3d 767 (10th Cir. 2000); Glenn v. Hogan Bros., Inc., Civil Action No. 03-6578, slip op. (E.D. PA June 24, 2005); Robinson v. Valmont Industries, 238 F.3d 1045, 1047 (8th Cir. 2001); Pedigo v. National Cart Co., Inc., 2004 U.S. App. LEXIS 8230 (8th Cir. 2004); Vance v. Southern Bell Telephone & Telegraph Co., 863 F.2d 1503 (11th Cir.1989); Hardy v. USF Reddaway, Inc., 2004 U.S. Dist. LEXIS 10179 (D. Or. 2004); Wilson v. Dana Corp., 210 F. Supp. 2d 867 (W.D. KY 2002); Miller v. Rowan Cos., Inc., 55 F. Supp. 2d 568 (S.D. Miss. 1998); Lewis v. Snow, 2003 U.S. Dist. LEXIS 15700 (S.D.N.Y. 2003); Settle v. Baltimore County, 34 F. Supp. 2d 969 (D. MD 1999); Snell v. Suffolk County, 782 F.2d 1094 (2d Cir. 1986); Henderson v. International Union, 263 F. Supp. 2d 1245 (D. Kan. 2003). See also Williams v. New York City Hous. Auth., 154 F. Supp. 2d 820, 824 (S.D.N.Y. 2001).

F.2d 796, 803 (1st Cir.1980)("An employer may not stand by and allow an employee to be subjected to a course of racial harassment by co-workers, and thus defendants must accept responsibility for their supervisors' derelictions, if such existed, in responding to the racial problem"); Clark v. UPS, Inc., 400 F.3d 341 (6th Cir. 2005)(noting that an employer can be held liable for harassment of which it is aware, even if the employee has not made a complaint).  Therefore, the assertion that Kaletta had not received a complaint about the noose, should not relieve the Defendant from liability for Kaletta's failure to take any remedial action.

The Defendant also argues that Kaletta's knowledge of the noose incident should not be imputed to the Defendant because Kaletta held a "modest position."  However, Kaletta testified that his duties and responsibilities as the Meat Department Manager included "oversee[ing] the meat and Seafood Department, ordering, scheduling, just delegation of work for the employees that are there."  See Deposition of Stanley Kaletta dated January 11, 2005, p. 7 ("Kaletta Dep.").  A copy of the relevant pages of this deposition is attached hereto as Exhibit "7".  As the Meat Department Manager, Kaletta supervised the employees in the Meat and Seafood Department, including Mr. Ingalls and Mr. Rankin, the individuals who hung the noose in Mr. Rosemond's office.  See Joseph Rosemond Deposition dated November 4, 2004, p. 127 ("Rosemond Dep."); a copy of the relevant portions of Mr. Rosemond's deposition is attached hereto as Exhibit "8"; Ingalls Dep., p. 9; Rankin Dep., pp. 12, 14; Kaletta Dep., pp. 7-8.  In at least one document, the Defendant specifically noted that, as a Department Manager,  Kaletta was expected to pass on any information about unlawful harassment.  See Kaletta Report of Change, bates stamped 61 (Defendant's Exhibit F).  Additionally, the Defendant has stated that Kaletta "needs to understand as a Department Manager he cannot condone this kind of behavior."  See Id.  Thus, contrary to Defendant's assertion, Kaletta was an employee charged with the responsibility for addressing harassment in the workplace.

The Massachusetts Supreme Judicial Court has held that once a supervisor is made aware of harassment, the employer is notified and has an affirmative obligation to remedy the situation.  See College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 167, 508 N.E.2d 587 (1987).  Similarly, the First Circuit has held that when the employer gives an employee the authority to receive notice of sexual harassment complaints, that employee's knowledge of sexual harassment should be imputed to the employer.  See Crowley v. L.L. Bean, Inc., 303 F.3d 387, 402-403 (1st Cir. 2002), citing Sims v. Health Midwest Physician Servs. Corp., 196 F.3d 915, 920-921 (8th Cir.1999) (stating that "employer liability could attach if information of the harassment had come to the attention of someone who is reasonably believed to have a duty to pass on the information.").[2]  Likewise, the Second Circuit has described the basis for imputing an employee's knowledge to an employer as follows:

> Taken as a whole, the cases demonstrate that for purposes of Title VII, "management-level employees" [that is, employees whose knowledge can be imputed to the employer] encompass two groups of persons: first, supervisors possessing substantial authority and discretion to make decisions concerning the terms of the harasser's or harassee's employment; and second, non-management employees charged with substantial responsibility for relaying employee complaints to management, particularly where management is located away from the workplace. If a co-worker has knowledge of a harassee's complaint, but that co-worker lacks authority to counsel, investigate, suspend, or fire the accused harasser, or to change the conditions of the harassee's employment, the co-worker's inaction does not spark employer liability unless that co-worker has an official or strong de facto duty to act as a conduit to management for complaints about work conditions.

Torres, 116 F.3d at 636-38 (quoting Lamb v. Household Credit Servs., 956 F. Supp. 1511, 1517 (N.D. Cal. 1997)), cert. denied, 522 U.S. 997 (1997); see also

---

[2] In Sims, an office manager named an employee to be "acting supervisor."  Employees were informed that they could report problems to the acting supervisor while the office manager was not present.  Although the plaintiff never complained to the acting supervisor about sexual harassment, the acting supervisor was made aware of the sexual harassment through other employees.  The Court found that the acting supervisor's knowledge should be imputed to the employer.  The Defendant has attempted to distinguish Sims by noting that the Sims Court was addressing an employer's affirmative defense in a supervisor harassment case.  However, the principles embodied in the affirmative defense are contained within the prima facie elements of a co-worker harassment case.  See Swinton v. Potomac Corp., 270 F.3d 794, 805  (9th Cir. 2001), cert. denied, 535 U.S. 1018 (2002).

Williamson v. City of Houston, Tex., 148 F.3d 462, 467 (5th Cir. 1998) ("If the employer has structured its organization such that a given individual has the authority to accept notice of a harassment problem, then notice to that individual is sufficient to hold the employer liable."); Swinton, 270 F.3d at 804-05 (holding that the employer could be held liable when a low level supervisor who witnessed racist "jokes" and did nothing to stop them, because the supervisor had been charged with the duty to act as a conduit to management to report complaints), cert. denied, 535 U.S. 1018 (2002).

The Defendant states that "other cases" suggest that Kaletta's supervisory position is insufficient to impute knowledge to the Defendant. However, in support of this assertion, the Defendant provides only an inapposite quote from Faragher v. City of Boca Raton, 524 U.S., 775 (1998). Contrary to the Defendant's assertion, the quoted language merely notes that several District Courts and Courts of Appeals have held that an employer may be liable when its high-level officials are aware of harassment and have done nothing to stop it. The quoted language does not provide any guidance regarding when a court may not impute an employee's knowledge to an employer. Furthermore, the Supreme Court has more recently refused to reconsider a Court of Appeals decision which held an employer liable when a low-level supervisor, who had the duty to report employee complaints, knew of racial harassment and failed to take any action to stop it. See Swinton, 270 F.3d at 804-05, cert. denied, 535 U.S. 1018 (2002).

In this case, Kaletta observed his subordinate employees hanging a noose in the office of an African American employee. The evidence shows that the Defendant explicitly stated that Kaletta was responsible to report such harassment and could not, as a department manager, condone such harassment. Nevertheless, Kaletta did not discipline or reprimand his subordinates, express displeasure with their actions, take down the noose, report the incident, or take any other corrective action. See Rankin Dep., p. 35-36; Ingalls Dep., 13; Flannery Dep., p. 55-56; Russello Dep.; Defendant's

Investigation Notes, bates stamped 183.[3]  A copy of these notes is attached hereto as Exhibit "9".  Thus, the Report properly concluded that a reasonable jury could find that the Defendant knew or should have known about the harassment.  As a result, the Report properly concluded that Mr. Rosemond has sufficient evidence to sustain his burden regarding this element of his claim.

**B.  The Report Properly Concluded That A Jury Could Find That Defendant Failed To Take Appropriate And Effective Remedial Action**

The Defendant objects to the Report's finding that a reasonable jury could conclude that the Defendant failed to take appropriate remedial action. The Defendant largely bases its legal argument on the assertion that the Report failed to consider Defendant's response under a subjective "good faith" standard.  In support of this proposition, Defendant repeatedly cites to Blankenship v. Parke Care Centers, Inc., 123 F.3d 868, 873 (6th Cir. 1997), a Sixth Circuit, pre-Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998) case.  Defendant contends that, under the standard set out in Blankenship, it cannot be held liable for co-worker harassment if it "in good faith" believed that its response was sufficient.  In 2005, the Sixth Circuit recognized that its holding in Blankenship regarding the "good faith" standard had been overruled. See Collette v. Stein-Mart, Inc., 126 Fed. Appx. 678, 684 n. 3 (6th Cir. 2005); see also Madeja v. MPB Corp., 149 N.H. 371, 821 A.2d 1034, 1042-43 (2003) (noting that Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 758-59 (1998), and Faragher v. Boca Raton, 524 U.S. 775, 799 (1998) effectively overruled Blankenship). In Collette, the Sixth Circuit explicitly stated that "an employer may be held liable when its remedial response is merely negligent, no matter how well-intentioned." Collette, 126 Fed. Appx. at 684 n. 3.  Thus, the Defendant's reliance on an overruled, Sixth Circuit case is

---

[3]  In fact, the evidence indicates that he may have joked about the noose and participated in hanging the noose.  The investigation also showed that Kaletta, upon seeing the noose, jokingly commented "oh, who's the comedian?"  See Rankin Dep., pp. 31; Ingalls Dep., p. 13.  Additionally, Scott Ziter, Defendant's Director of Security, told Mr. Rosemond that he had reviewed the security tapes, interviewed people, and discovered that Mr. Rankin, Mr. Ingalls and Mr. Kaletta hung the noose.  See Rosemond Dep., p. 80-81.

misplaced. The Report appropriately considered Stop & Shop's response under an objective reasonableness standard, and not the more lenient "good faith" standard suggested by the Defendant.[4]

However, under either standard, Kaletta's complete failure to take any remedial action would not qualify as appropriate, effective or as a good faith effort, calculated to end the harassment. Before Mr. Rosemond was subjected to the noose hanging in his office, Kaletta saw his subordinates hanging the noose in Mr. Rosemond's office. See Rankin Dep., pp. 12, 31; Ingalls Dep., p. 9, 13. The Defendant gave Kaletta a responsibility to pass on any information about unlawful harassment. See Defendant's Exhibit F. Because Kaletta observed his subordinates engaging in harassing behavior before Mr. Rosemond came to work, he could have taken action to prevent or mitigate the harassment and its impact. Nevertheless, Kaletta did not express that his subordinates' behavior was inappropriate, take down the noose, report the incident, or take any other preventive or corrective action. If Kaletta had responded appropriately to the noose, Mr. Rosemond would have been spared the harassment of finding a noose hanging in his office. As a result of Kaletta's complete inaction and complicit approval of the noose, Mr. Rosemond, an African American, arrived at work to find a noose hanging in his office. See Complaint, paragraph 21; Answer and Additional Defenses, paragraph 21; copies of which are attached hereto as Exhibit "10" and "11", and Rosemond Dep., p. 37, 39-42.

Thus, the Report properly concluded that Kaletta was "uniquely qualified to pass on information to upper-level management," but failed to do so. See Report, p. 23. As

---

[4] Under both Massachusetts and Federal law, remedial action must not only be *reasonably* calculated to end the harassment, but also proportionate to the offense. See e.g., Saad v. Stanley Street Treatment and Resources, Inc., 1994 U.S. Dist. LEXIS 20728 at *25-26, 1994 WL 846911 at *10 (D. Mass. May 20, 1994)("answer to that inquiry is properly shaped by the specific tenor of the situation they were called upon to address"), citing Ellison v. Brady, 924 F.2d 872, 881 (9th Cir. 1991)(remedy should be reasonably calculated to end harassment and persuade potential harassers to refrain from unlawful conduct); MCAD Fact Sheet, Sexual Harassment in Employment ("Generally, the corrective action should reflect the severity of the conduct."); MCAD Guidelines on Sexual Harassment, Section VI(F). Similarly, remedial action should also be *reasonably* calculated to deter future harassment. See Yamaguchi v. United States Dep't of the Air Force, 109 F.3d F.3d 1475, 1482 (9th Cir. 1997).

noted above, the First Circuit has held that employer liability may attach "if information of the harassment had come to the attention of someone who is reasonably believed to have a duty to pass on the information." See Crowley, 303 F.3d at 402-403.  Similarly, the Massachusetts Supreme Judicial Court has indicated that employers "would be liable for a supervisor who fails to remedy or report coworker harassment." See College-Town, 400 Mass. at 167, 508 N.E.2d 587.  A jury could reasonably conclude that Kaletta's response to the noose incident, was not reasonable, appropriate, effective or a good-faith effort to end the harassment.  See Swinton v. Potomac Corp., 270 F.3d 794, 804-05  (9th Cir. 2001)(holding that the employer could be held liable when a low level supervisor who witnessed racist "jokes" and did nothing to stop them, because the supervisor had been charged with the duty to act as a conduit to management to report complaints), cert. denied, 535 U.S. 1018 (2002).

      The Defendant also complains that the Report incorrectly considered testimony from Defendant's executives regarding conduct which would lead to termination.   This testimony, which was quoted in the Report and Mr. Rosemond's Opposition to Defendant's Motion for Summary Judgment, indicates that Defendant's policy was to immediately terminate employees for minor misconduct, such as theft in an amount of "a nickle," as well as for more serious conduct such as  harassment and threats.  See Flannery Dep., p. 36; Russello Dep., p. 23; Deposition of Kathleen Collins dated January 5, 2005, p. 28 ("Collins Dep."); Barsolou Dep., p. 33.  A copy of the relevant portions of the Collins Dep. is attached hereto as Exhibit "12".  The Defendant complains that such evidence is not relevant to whether the Defendant "in good faith believed that the punishment it meted out" was sufficient.   However, as noted above, the subjective "good faith" standard proposed by Defendant is not the appropriate standard.  See Collette, 126 Fed. Appx. at 684 n. 3; Madeja v. MPB Corp., 821 A.2d at 1042-43.  The Report properly considered such testimony, as it may lead a jury to reasonably conclude that action taken by the Defendant was not objectively reasonable, appropriate, or calculated to deter future harassment.

The Defendant also complains that the Report "failed to acknowledge the most relevant evidence - the absence of a history of prior racial harassment or further instances of harassing conduct." However, the Report does acknowledge that Rankin and Ingalls "previously made 'national origin jokes' in the presence of at least one higher-level manager, Wutka." See Report p., 24. It is undisputed that Defendant did not take any steps to deter this behavior. Nevertheless, the Defendant claims that this evidence is not relevant to Mr. Rosemond's claims of racial harassment because the "jokes" were related to national origin.[5]

In this case, the employees who hung the noose claimed it was a "joke." Evidence that these same employees openly made jokes about persons of Polish descent in the presence of Polish American employees and management would appear to be relevant to the claim that they later engaged in the harassment of an African American employee in the presence of their supervisor, but justified their actions as being merely a "joke."

Furthermore, both the First Circuit and the Massachusetts Appeals Court have held that evidence of other incidents of harassment or discrimination may be relevant, even though they do not precisely coincide with the plaintiff's claims. See Conway v. Electro Switch Corp., 825 F.2d 593, 597-98 (1st Cir. 1987); Brennan v. GTE Government Systems Corp., 150 F.3d 21, 28 (1st Cir. 1998)("While proof of a general atmosphere of discrimination is not the equivalent of proof of discrimination against an individual, it "may add 'color' to an employer's decision-making process."); Cummings v. Standard Register Co., 265 F.3d 56, 63 (1st Cir.2001)(approving the admission of evidence regarding other discrimination, despite the fact that those claims dealt with

---

[5] The Defendant also claims that these "Polish jokes" were merely "banter" between Rankin, Ingalls, and Wutka. However, contrary to Defendant's assertion, there is no indication that Wutka participated in these "jokes." Nor is there concrete evidence that Wutka and the other targeted employee found these comments to be merely inoffensive banter. Although the Defendant implies that jokes about certain national origins (i.e., Polish) are acceptable and not offensive, a reasonable person of Polish descent may find Polish "jokes" to be offensive and harassing.

9

"different time periods, different supervisors, and different areas of the company."); Clifton v. Massachusetts Bay Transportation Authority, 62 Mass. App. Ct. 164, 170 (2004)(holding that evidence of prior discrimination against a co-worker for which the employer failed to take any disciplinary action was properly admitted as evidence of the discriminatory environment to which the plaintiff was subjected.).  Therefore, the Report properly considered this evidence as "part of the overall environment" which Mr. Rosemond is portraying.

Additionally, after Mr. Rosemond filed his Opposition to Defendant's Motion for Summary Judgment, the Defendant found several "hangman" figures displayed throughout Mr. Rosemond's current store.  See Affidavit of Mr. Rosemond, attached hereto as Exhibit "13".  Thus, there is some evidence that conduct of a similar nature has continued to occur.

Because there is evidence upon which a jury could conclude that the Defendant's remedial action was not appropriate, effective, or reasonably calculated to end the harassment, the Report properly concluded that summary judgment was not appropriate. See Paroline v. Unisys Corp., 879 F.2d 100, 106 (4th Cir. 1989), vacated in part on other grounds, 900 F.2d 27.(4th Cir. 1990) (en banc) quoting Katz v. Dole, 709 F.2d 251, 256 (4th Cir.1983)("The adequacy of [the employer's] remedy is a question of fact which a court may not dispose of at the summary judgment stage if reasonable minds could differ as to whether the remedial action was 'reasonably calculated to end the harassment.'") .

**C.    The Report Properly Concluded That The Hanging Of A Noose In The Office Of An African American Employee Was Sufficiently Severe And Pervasive.**

The Defendant objects to the Report's conclusion that "a reasonable jury could determine that the noose incident, in and of itself, demonstrated that Plaintiff was subjected to a racially-hostile work environment."  See Report, pp. 15-16.  The

10

Defendant complains that the Report " fails to analyze the specific facts of this case in the context of existing case law." The Defendant cites two cases in support of this proposition. Both cases are easily distinguishable.   The first, Wilson v. Dana Corp., 210 F. Supp. 2d 867 (W.D. Ky. 2002), is a case under the Kentucky Civil Rights Act. Thus, it has absolutely no relevance to the present action. Additionally, the plaintiffs in Wilson did not allege that the defendant should have taken stronger action against the perpetrators.  In Settle v. Baltimore County, 34 F. Supp. 2d 969 (D. Md. 1999), the noose was a loop of bungee cord that had been taped to a broom handle.  The plaintiff saw a co-worker carrying the item he described as a noose on only one occasion.   The noose was not in or near the plaintiff's workspace or directed at the plaintiff or any other African American.  Other African American employees indicated that they had seen the item that the plaintiff described as a noose and were not offended by it.

By contrast, in the present action, two Caucasian employees hung a noose in an African American employee's workspace with the tacit approval of their Caucasian supervisor.  The supervisor did not take any action to prevent or correct the behavior of his subordinates or to report the incident to upper management.  As noted in Mr. Rosemond's Statement of Facts in Dispute, several of Defendant's African American employees were seriously disturbed by this incident.  See Plaintiff's Statement of Facts in Dispute, paragraph 28.  Additionally, several courts have indicated that such racial harassment often amounts to threats of violence for African Americans.  See Williams v. New York City Hous. Auth., 154 F. Supp. 2d 820, 824 (S.D.N.Y. 2001); Vance v. Southern Bell Telephone & Telegraph Co., 863 F.2d 1503, 1511 (11th Cir.1989); Harris v. Int'l Paper Co., 765 F. Supp. 1509, 1516 (D. Me. 1991).   "[T]he noose is among the most repugnant of all racist symbols, because it is itself an instrument of violence." See Williams, 154 F. Supp. 2d at 824.

Additionally, Mr. Rosemond's Opposition to Defendant's Motion for Summary Judgment included a thorough analysis of several cases which involved similar harassing conduct which was found to be severe and pervasive.  For instance, the

11

Williams case involved a noose that was observed by the plaintiff in a display case in a supervisor's office. The noose in the Williams case was not explicitly directed at the plaintiff or hung in the plaintiff's workspace. Nevertheless, the Williams Court held that "Defendant's contention, however that the display of a noose by a white supervisor in his office could not, as a matter of law, sufficiently 'alter the conditions of employment' for an African-American employee is naive and untenable." See Williams, 154 F. Supp. 2d at 826; see also Harris v. Int'l Paper Co., 765 F. Supp. 1509, 1516 (D. Me. 1991)(internal citations omitted)(noting that 'instances of racial violence or threatened violence which might appear to white observers as mere 'pranks' are, to black observers, evidence of threatening, pervasive attitudes'), vacated in part on other grounds, 765 F. Supp. 1529 (D. Me. 1991).

Similarly, in Vance v. Southern Bell Telephone & Telegraph Co., 863 F.2d 1503, 1511 (11th Cir.1989), a noose was hung on two occasions in the light fixture over the work station of the plaintiff, an African American female. Although the plaintiff did not complain about the noose incidents at the time, she brought the incidents up to the employer several months later during a grievance hearing. The Eleventh Circuit noted "It is hard to imagine an incident of this sort taking place in 1984. The grossness of hanging an object resembling a noose at the work station of a black female is self-evident." Id.

Furthermore, the Massachusetts Commission Against Discrimination recently held that one incident of racial harassment, which did not involve any threat of violence, was sufficiently severe or pervasive.[6] In Mass. Comm'n Against Discrimination v. Aramark Corp., 2004 WL 1920884 (MCAD 2004), a supervisory employee, who did not have any actual authority over the complainant, referred to the complainant with two offensive racial epithets in front of a crowd of people in a public venue. The Full

---

[6] The Supreme Judicial Court has noted that the MCAD's interpretations of Massachusetts General Laws Chapter 151B should be accorded deference. See College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 165 (1987)(citations omitted).

Commission upheld the Hearing Officer's conclusion that this one incident of racial harassment was sufficiently severe or pervasive to alter the terms and conditions of the complainant's employment.  Additionally, the Full Commission noted that, in light of the harassment suffered by the complainant, it was "disturbed" that the Hearing Officer had only awarded $35,000.00 in emotional distress damages.  These cases indicate that the Report properly concluded that it is reasonable to conclude that the racial harassment suffered by Mr. Rosemond, *id est* finding a noose hanging in his workspace, was sufficiently severe or pervasive to create a hostile working environment.

**CONCLUSION**

For the foregoing reasons, the Plaintiff, Joseph Rosemond, requests that the Magistrate's Report regarding the issues of coworker harassment and whether the Defendant, Stop and Shop Supermarket Company knew or should have known of the noose incident and therefore be held liable be affirmed.

        Respectfully submitted,

        The Plaintiff, Joseph Rosemond,
        By His Attorney,


          /s/    Tani E. Sapirstein
        Tani E.  Sapirstein, Esq.
        BBO #236850
        SAPIRSTEIN & SAPIRSTEIN, P.C.
        1341 Main Street - 3rd Floor
        Springfield, MA 01103
        Tel:   (413)  827-7500
        Fax:  (413)  827-7797

Dated: April 26, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document was served upon the following, via first class mail, postage prepaid, to:

>Lisa J. Damon, Esq.
>Yvette Politis, Esq.
>Seyfarth Shaw LLP
>World Trade Center East
>Two Seaport Lane, Suite 300
>Boston, MA 02210-2028

        /s/ Tani E. Sapirstein
        Tani E. Sapirstein

Dated: April 26, 2006

K:\CASEFILE\ROSEMOND\Opposition to Objections.wpd