UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH ROSEMOND,<br>   Plaintiff,<br>v.<br><br>STOP AND SHOP SUPERMARKET<br>COMPANY,<br>   Defendant. | C.A. No. 04-30072-KPN |

## ANSWER AND ADDITIONAL DEFENSES

Pursuant to Fed. R. Civ. P. 12, Defendant, The Stop & Shop Supermarket Company LLC ("Stop & Shop" or "Defendant"), in response to Plaintiff Joseph Rosemond's Complaint, hereby files the within answer.

### FIRST DEFENSE

#### PARTIES

1. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2. Defendant admits the allegations contained in Paragraph 2 of the Complaint.

#### JURISDICTION

3. Paragraph 3 of the Complaint contains argument and conclusions of law to which no response is required.

4. Paragraph 4 of the Complaint contains argument and conclusions of law to which no response is required.

5. Defendant admits the allegations contained in Paragraph 5 of the Complaint.

EXHIBIT #11

6. Defendant admits that Plaintiff submitted a letter dated March 10, 2004, to the Massachusetts Commission Against Discrimination requesting permission to withdraw his Charge and to file a civil action regarding the same matter in court.

7. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint, except admits that the Equal Employment Opportunity Commission issued Plaintiff a notice of his right to sue on April 1, 2004.

## FACTS

8. Upon information and belief, Defendant admits the allegations contained in Paragraph 8 of the Complaint.

9. Defendant admits the allegations contained in Paragraph 9 of the Complaint.

10. Defendant admits the allegations contained in Paragraph 10 of the Complaint.

11. Defendant admits that as a Customer Service Manager, Plaintiff often met with Michael Leach, the Store Manager, and likely met with Mr. Leach during the summer of 2003.

12. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint.

13. Defendant admits that during the summer of 2003, Plaintiff attended a meeting with Mr. Leach in which Plaintiff brought cups of coffee for himself and Mr. Leach.

14. Defendant denies the allegations contained in Paragraph 14 of the Complaint, except admits that during the summer of 2003, Plaintiff attended a meeting with Mr. Leach and David Taranova, the Chicopee Store Bake Shop Lead Clerk. Defendant also admits that Mr. Taranova is a non-exempt, union employee, who does not have the authority to make any decisions concerning hiring, disciplinary action, termination, promotions of Stop & Shop employees.

15. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint.

16. Defendant denies the allegations contained in Paragraph 16 of the Complaint, except admits that during a meeting in the summer of 2003 at which Plaintiff, Mr. Taranova, Mr. Leach and Marcy Wutka were present, Plaintiff brought cups of coffee for Mr. Leach and Ms. Wutka but not Mr. Taranova. In jest, Mr. Taranova said something like "Where's my coffee? What am I, Black?" Shortly after the meeting, Mr. Taranova apologized to Plaintiff for his comment.

17. Defendant denies the allegations contained in Paragraph 17 of the Complaint.

18. Defendant denies the allegations contained in Paragraph 18 of the Complaint.

19. Defendant denies the allegations contained in Paragraph 19 of the Complaint.

20. Defendant denies that David Taranova made the statement alleged by the Plaintiff in Paragraph 19. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph 20 of the Complaint.

21. Upon information and belief, Defendant admits that on the morning of December 10, 2003, Plaintiff found a rope fashioned in the shape of a noose hanging over the desk of his co-manager, Marcy Wutka. Defendant denies that Plaintiff had an office at the Chicopee Store.

22. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 22 of the Complaint.

23. Defendant denies the allegations contained in Paragraph 23 of the Complaint, except admits that Plaintiff was the only African-American manager who had a desk located in the common area for employees known as the "Mezzanine Area."

24. Defendant denies the allegations contained in Paragraph 24 of the Complaint, except admits that Marcy Wutka, a Caucasian Assistant Store Manager, also had a desk located in the Mezzanine Area.

25. Defendant admits that Ms. Wutka was on vacation from the Chicopee Store from December 6, 2003 to December 10, 2003, and December 12, 2003 to December 14, 2003.

26. Defendant admits that Plaintiff spoke to Mr. Leach about the rope on December 10, 2003.

27. Defendant denies the allegations contained in Paragraph 27 of the Complaint.

28. Defendant denies that Mr. Leach did not take Plaintiff's complaint regarding the rope seriously, except admits that Plaintiff discussed his feelings regarding the rope with Mr. Leach.

29. Defendant admits that after Plaintiff discussed his feeling regarding the rope with Mr. Leach, Mr. Leach initiated an investigation to learn who put up the rope over Ms. Wutka's desk, which included having the Chicopee Store security staff review video surveillance tapes.

30. Defendant denies the allegations contained in Paragraph 30 of the Complaint, except admits that it reviewed the video surveillance tapes and, following an investigation, determined that two employees entered the Mezzanine Area before Plaintiff arrived at the store on December 10, 2003, and put up the rope over Ms. Wutka's desk.

31. Defendant denies the allegations contained in Paragraph 31 of the Complaint, except admits the video surveillance tapes showed that employees Charles Ingalls and Jeramie Rankins entered the Mezzanine Area before Plaintiff arrived at the store on December 10, 2003.

32. Defendant denies the allegations contained in Paragraph 32 of the Complaint, except admits that Stanley Kaletta entered the Mezzanine Area after Mr. Ingalls and Mr. Rankins

had entered the Mezzanine Area and put up the rope. Defendant also admits that Mr. Kaletta, a non-exempt, union employee, who does not have the authority to make any decisions concerning hiring, disciplinary action, termination, promotions of Stop & Shop employees, is the head of the Chicopee Store Meat Department.

33. Defendant denies the allegations contained in Paragraph 33 of the Complaint, except admits that Mr. Ingalls and Mr. Rankins admitted to putting up the rope over Ms. Wutka's desk located in the Mezzanine Area.

34. Defendant denies the allegations contained in Paragraph 34 of the Complaint, except admits that Mr. Rankins and Mr. Ingalls admitted that they put up the rope over Ms. Wutka's desk as a joke. Defendant admits that Ms. Wutka was on vacation from the Chicopee Store from December 6, 2003 to December 10, 2003, and December 12, 2003 to December 14, 2003.

35. Defendant denies that Mr. Kaletta was aware that employees Charles Ingalls and/or Jeramie Rankins planned to put up or had put up a rope over Ms. Wutka's desk, except admits that Mr. Kaletta later saw the rope over Ms. Wutka's desk.

36. Defendant denies the allegations contained in Paragraph 36 of the Complaint.

37. Defendant denies the allegations contained in Paragraph 37 of the Complaint, except admits that its investigation revealed that employees Mr. Ingalls and Mr. Rankin put up the rope over Ms. Wutka's desk as a joke and did not intend it for the Plaintiff.

38. Defendant denies the allegations contained in Paragraph 38 of the Complaint.

39. **[THERE IS NO PARAGRAPH 39 IN THE COMPLAINT.]**

40. Defendant denies the allegations contained in Paragraph 40 of the Complaint. Defendant suspended Mr. Ingalls and Mr. Rankins pending the termination of their employment.

They grieved their suspensions pursuant to their union agreement with Defendant. But for this grievance, Mr. Ingalls's and Mr. Rankins's terminations would be final. The union demanded that the Defendant fully reinstate them to their positions. Following two hearings with Mr. Ingalls's and Mr. Rankins's union representatives concerning their terminations, Defendant, at the urging of the union representatives, reduced Mr. Ingalls's and Mr. Rankins's terminations to suspensions without pay. Defendant also transferred Mr. Ingalls and Mr. Rankin out of the Chicopee Store into separate stores.

41. Defendant denies the allegations contained in Paragraph 41 of the Complaint and repeats and incorporates by reference its answer to Paragraph 40.

42. Defendant denies the allegations contained in Paragraph 42 of the Complaint and repeats and incorporates by reference its answer to Paragraph 40.

43. Defendant denies the allegations contained in Paragraph 43 of the Complaint, except admits that it counseled Mr. Kaletta for not immediately addressing the situation after seeing the rope over Ms. Wutka's desk.

44. Defendant admits the allegations contained in Paragraph 44 of the Complaint.

45. Defendant denies the allegations contained in Paragraph 45 of the Complaint.

46. Paragraph 46 of the Complaint contains argument and conclusions of law to which no response is required. To the extent a response is required, Defendant denies the allegations contained in Paragraph 46 of the Complaint.

47. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 47 of the Complaint.

48. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 48 of the Complaint.

## COUNT I – RACE DISCRIMINATION
## 42 U.S.C. § 2000e, et seq.

49.     Defendant repeats and incorporates by reference its answers to Paragraphs 1 through 48 above.

50.     Defendant denies the allegations contained in Paragraph 50 of the Complaint.

51.     Defendant denies the allegations contained in Paragraph 50 of the Complaint.

## COUNT II – RACIAL HARASSMENT
## 42 U.S.C. § 2000e, et seq.

52.     Defendant repeats and incorporates by reference its answers to Paragraphs 1 through 51 above.

53.     Defendant denies the allegations contained in Paragraph 53 of the Complaint.

54.     Defendant denies the allegations contained in Paragraph 54 of the Complaint.

## COUNT III – RACE DISCRIMINATION
## M.G.L. C. 151B

55.     Defendant repeats and incorporates by reference its answers to Paragraphs 1 through 55 above.

56.     Defendant denies the allegations contained in Paragraph 56 of the Complaint.

57.     Defendant denies the allegations contained in Paragraph 57 of the Complaint.

## COUNT IV – RACIAL HARASSMENT
## M.G.L. C. 151B

58.     Defendant repeats and incorporates by reference its answers to Paragraphs 1 through 58 above.

59.     Defendant denies the allegations contained in Paragraph 59 of the Complaint.

60.     Defendant denies the allegations contained in Paragraph 60 of the Complaint.

## FIRST ADDITIONAL DEFENSE

Plaintiff fails to state claims upon which relief may be granted.

## SECOND ADDITIONAL DEFENSE

Some or all of Plaintiff's claims are barred by the doctrines of waiver, laches, and estoppel.

## THIRD ADDITIONAL DEFENSE

Without conceding that the Plaintiff has suffered any damages as a result of any purportedly wrongful act of the Defendant, Plaintiff has failed to mitigate his damages.

## FOURTH ADDITIONAL DEFENSE

This Court lacks subject matter jurisdiction over some or all of Plaintiffs claims as he failed to allege them before the Massachusetts Commission Against Discrimination.

## FIFTH ADDITIONAL DEFENSE

Plaintiff's claims are barred to the extent that he fails to set forth a prima facie case of employment discrimination on the basis of race.

## SIXTH ADDITIONAL DEFENSE

Plaintiff's claims are barred to the extent that he fails to set forth a prima facie case of racial harassment.

## SEVENTH ADDITIONAL DEFENSE

Plaintiff's claims are not actionable because the employment practices and/or decisions challenged in the Complaint are justified by legitimate, non-discriminatory and non-pretextual reasons.

## EIGHTH ADDITIONAL DEFENSE

Defendant has complied with all laws and regulations and otherwise satisfied its statutory obligations toward Plaintiff under Title VII of the Civil Rights Act and Mass. Gen. Laws c. 151B.

## RESERVATION OF RIGHTS CLAUSE

Defendant reserves the right to amend its answer and defenses, and to add additional defenses or delete or withdraw existing defenses as such supplementation or deletion may become necessary after reasonable opportunity for appropriate discovery on the allegations contained in the Plaintiff's Complaint.

**WHEREFORE**, Defendant respectfully asks the Court to dismiss with prejudice the Complaint, and to award Defendant's attorneys' fees and costs and such other relief as the Court deems just and proper.

Respectfully submitted,

DEFENDANT,
THE STOP & SHOP SUPERMARKET COMPANY LLC,
By its Attorney(s),

/s/ Yvette Politis
Lisa Damon (BBO# 558843)
Yvette Politis (BBO# 644986)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:   (617) 946-4800
Telecopier:   (617) 946-4801

DATED: December 1, 2004

## CERTIFICATE OF SERVICE

I, Yvette Politis, hereby certify that on December 1, 2004, I caused a true copy of the above to be delivered upon Plaintiff's attorney, Tani E. Sapirstein, Sapirstein & Sapirstein, P.C., 1341 Main Street, 3rd Floor, Springfield, MA 01103.

/s/ Yvette Politis
Yvette Politis

9

1.   BO1 15683316.1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 04-30072-KPN
Pages 1-47

JOSEPH ROSEMOND

vs.

STOP AND SHOP SUPERMARKET COMPANY

ORIGINAL

---
DEPOSITION OF:   KATHLEEN COLLINS
---

Taken before Joanne Coyle, Certified Shorthand Reporter, Notary Public, pursuant to the Federal Rules of Civil Procedure, at the offices of Sapirstein & Sapirstein, P.C., 1341 Main Street, Springfield, Massachusetts on January 5, 2005, commencing at 12:15 p.m.

Joanne Coyle
Certified Shorthand Reporter
License No. 106693

**PERLIK and COYLE REPORTING**
Certified Professional Reporters

1331 Main Street
Springfield, MA 01103
Tel. (413) 731-7931    Fax (413) 731-7451

EXHIBIT #12

PERLIK and COYLE REPORTING

Case 3:04-cv-30072-MAP    Document 56-4    Filed 04/26/2006    Page 11 of 11

JOSEPH ROSEMOND vs. STOP & SHOP
KATHLEEN COLLINS          JANUARY 5, 2005

**25**

1 how upset Charlie was about the whole incident and
2 the change that took place in his life; the same
3 with Jeramie.
4    Q.  Did you learn that by talking with them?
5    A.  Yes.
6    Q.  What did they tell you?
7    A.  That it had changed their life, that
8 they looked at things a lot differently.  Jeramie
9 and Charlie were very close, kind of like a
10 father-son relationship and that was all pulled
11 apart.
12       That day, everything ended and stuff
13 along that line.
14    Q.  Did you talk to Joe Rosemond about the
15 incident?
16    A.  I tried to talk to Joe Rosemond.  I
17 called him several times and he never returned my
18 phone call.
19    Q.  So you never did talk to him about it?
20    A.  No.
21    Q.  Ms. Flannery -- you said you had
22 discussions with her?
23    A.  Yes; I would.
24    Q.  Do you recall what the discussions were?

**26**

1    A.  Basically, who was brought into the
2 case, that Kathy Russello -- is that her last
3 name -- came up from New York.
4       They wanted to bring an outside person
5 in from the company to get a totally clear
6 perspective who had never been involved as far as
7 knowing any of the people in the case.  What her
8 feelings were about the case, the direction it was
9 going in and that's about it.
10   Q.  What did she say her feelings were about
11 the case and the direction that it was going in?
12   A.  I got a write-up with her.  Basically
13 she communicates with me with a write-up, tells me
14 who was interviewed, who was talked to and what
15 their statements were, but it would be a write-up,
16 not a handwritten document.  I never received a
17 handwritten anything.
18   Q.  I'm going to show you Stop & Shop 168,
19 which is part of Exhibit 1.
20      Was that something you received from
21 Ms. Flannery? (Indicating.)
22   A.  No.
23   Q.  And you didn't see what you received
24 from Ms. Flannery in this package?

**27**

1    A.  No.
2    Q.  Did she discuss her feelings about the
3 case or the direction it was going in with you?
4    A.  She didn't really discuss it.  I can't
5 give you specifics about her personal feelings.
6 It was more about what was going on in the
7 investigation and exactly the statements that were
8 made.
9    Q.  Did she tell you -- what did she tell
10 you about that?
11   A.  I don't quite know what you mean.
12   Q.  What did she tell you about the
13 investigation and the statements that were made?
14   A.  The investigation, what was going on
15 with who was coming in to do the talk -- like I
16 said, Kathy, Loss Prevention that was brought in.
17   Q.  Did she tell you who, from Loss
18 Prevention?
19   A.  Scott Ziter, who was the head of Loss
20 Prevention for Connecticut.  I was very confident
21 that those two individuals would do a very
22 thorough investigation.
23      She talked to me about the different
24 people who had come upstairs, the time clock, who

**28**

1 had, who hadn't seen anything and really that's
2 about it.
3    Q.  Did you have any input directly into the
4 decision regarding discipline?
5    A.  I was asked an opinion.
6    Q.  By?
7    A.  By, I believe it was Don.
8    Q.  Don Barsolou?
9    A.  Yes.
10   Q.  And you told him a suspension was your
11 opinion?
12   A.  That was my recommendation; yes,
13 suspension without pay.
14   Q.  What kinds of conduct would motivate you
15 to recommend termination of an employee?
16   A.  Direct violation of company policy,
17 theft.
18   Q.  Anything besides theft?
19   A.  Violence.
20   Q.  Anything else?
21   A.  In violence, it would be a case to
22 case -- you would have to look at the different
23 cases and the different circumstances.
24   Q.  Does a hanging noose have any