UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOSEPH ROSEMOND,  )
    Plaintiff,  )
v.  )  C.A. No. 04-30072-KPN
  )
STOP AND SHOP SUPERMARKET  )
COMPANY, LLC  )
    Defendant.  )

### MEMORANDUM IN SUPPORT OF STOP & SHOP'S MOTION TO STRIKE AFFIDAVIT OR IN THE ALTERNATIVE FOR LEAVE TO FILE RESPONDING AFFIDAVIT

#### Preliminary Statement

By Report and Recommendation dated March 22, 2006, the Magistrate Judge recommended that this Court deny the motion for summary judgment of Defendant Stop & Shop Supermarket Company ("Stop & Shop") with the limitation that this racial harassment case, which is based on a single incident that occurred in December 2003, proceed only on a theory of co-worker harassment. In opposing Stop & Shop's objection to the Report and Recommendation, Plaintiff Joseph Rosemond ("Plaintiff" or "Rosemond") submitted an affidavit that not only refers to an incident that occurred more than two years later and at a different store, but also fails to comply with the requirements of Rule 56(e) of the Fed. R. Civ. Proc. Specifically, he purports to recount an incident in his new store involving the display of stick figures made of plastic twist ties, but fails to establish that he has any personal knowledge of what occurred. Accordingly, the affidavit should be stricken. In the alternative, this Court should consider the affidavit Stop & Shop submits in response which places Rosemond's new and baseless allegations in context and establishes that, by Plaintiff's own admission, there is not even a hint of racial animosity permeating the store at which he now works. Accordingly, the affidavit has no impact on the Stop & Shop's motion for summary judgment.

**Background**

Plaintiff's racial harassment claim is based on a single incident that occurred in Store 36 in December 2003. In its Objection to the Report and Recommendation, Stop & Shop argued, among other things, that the facts unequivocally established that Stop & Shop's response to the incident was appropriate. In responding to this argument, Plaintiff claimed that "there is some evidence that conduct of a similar nature [to what occurred in December 2003] has continued to occur." *See* Plaintiff's Response to Defendant's Objection, at 10. Specifically, Plaintiff alleged that Stop & Shop "found several 'hangman' figures displayed throughout [his] current store." *Id.* Plaintiff submitted an affidavit which purports to support these claims, but utterly failed to establish that his allegations were based on personal knowledge. Improperly, Plaintiff is now using his opportunity to oppose Stop & Shop's Objection to the Report and Recommendation to insert new, and baseless, factual allegations into the summary judgment record in an attempt to falsely suggest that he was recently subjected to an incident of racial harassment.

**Argument**

**I.    Rosemond's Affidavit Does Not Comply With Rule 56(e).**

Rule 56(e) provides in relevant part, that "[s]upporting and opposing affidavits shall be made on <u>personal knowledge</u>, shall set forth such facts as would be admissible in evidence, and <u>shall show affirmatively</u> that the affiant is competent to testify to the matters stated therein." Where an affidavit is not based on firsthand knowledge or supporting documents it is not admissible and is properly stricken. (Emphasis added.) *See Garrity v. John Hancock Mut. Life Ins. Co.*, 2002 U.S. Dist. LEXIS 8343 (D. Mass., May 7, 2002) (copy attached hereto) (defendant's motion to strike granted where affidavits were not based on firsthand knowledge or supporting documentation).

2

In his affidavit, Rosemond contends that he "was investigated by Stop & Shop regarding an incident which occurred in my current store on my day off." Rosemond Affidavit, ¶ 1. He states that several "hangman" figures made from plastic twist ties were found hanging throughout his store and that the figures portrayed a man hanging from a noose. *Id.*, ¶¶ 2-4. Rosemond fails to establish that he has personal knowledge of these factual statements. He does not allege that he saw the figures hanging, how many of them were hung or where they were hung. Indeed, he admits Stop & Shop discovered them on his day off and he does not even claim that he was aware of what occurred until he was allegedly "investigated." Given Rosemond's failure to establish that he had personal knowledge of the facts he alleges and that he is competent to testify to them, his affidavit must be stricken for failure to comply with Rule 56(e).

## II.     The "Incident" Described in the Affidavit Is Irrelevant to the Motion for Summary Judgment.

Even assuming Rosemond had sufficient personal knowledge to save his affidavit, the affidavit is irrelevant. Given the fact that Rosemond is attempting to open the summary judgment record by offering his affidavit more than six months after the parties argued this motion, Stop & Shop should be permitted the opportunity to respond by submitting an affidavit. Stop & Shop's affidavit, submitted herewith and from one of the individuals who investigated the incident Rosemond purports to describe, provides a complete account of what occurred, rather than Rosemond's one-sided and decidedly scant portrayal of an incident about which he has obviously limited knowledge. A more complete description of what occurred and Rosemond's connection to it, reveals that no incident of racially harassing conduct occurred.

Stop & Shop initiated this investigation because, on Monday, April 10, 2006, General Merchandise clerk Luis Cordero in Store 94 pointed out to General Merchandise Manager Harry Mangerian, a non-exempt union employee, that two small stick figures made out of twist ties

3

were hanging in the General Merchandise office located at the back of the store. *See* Affidavit of Kenneth Burroughs, ¶¶ 2-3. Mangerian initially threw away the stick figures but later reported them to Store Manager Paul Thibault and gave him the figures. *Id*, ¶ 4. On Saturday, Grocery Manager Mike Kokosa had seen a similar stick figure made from twist ties attached to a potato chip rack by a twist tie and had also mentioned it to Thibault. *Id.*, ¶ 5.

Thibault reported the discovery of the stick figures to his District Manager, Kenneth Burroughs, who in turn notified Stop & Shop's HR Bob Spinella. *Id.*, ¶ 6. Concerned that the stick figures might have some significance, Spinella decided to conduct an investigation. *Id.* The Loss Prevention Department was contacted and associate Mike Panico was directed by his manager to review the store's videotapes of the relevant area for Saturday, April 8 through Monday April 10. *Id.*, ¶ 7. Based on who Panico observed on the videotapes, Burroughs and Julia Clarke, Human Resources Manager, conducted interviews of ten individuals. *Id.* Among those interviewed was Rosemond, who had been responsible for closing the store on Saturday night. *Id.*, ¶ 8.

Everyone interviewed was asked whether they had seen the stick figures or knew who had hung them. *Id.* No one interviewed knew who placed the figures or had any idea why they were hung. *Id.* In addition, they were asked about the general atmosphere in Store 94 and whether any incidents had occurred that were concerning. *Id.* No one expressed concern about the atmosphere in the store or complained of any inappropriate conduct. *Id.* Rosemond told Burroughs and Clarke that he was unaware of the stick figures until they told him about them and had no idea who might have placed them around the store. *Id.*, ¶ 9. Further, he told the interviewers that he was not aware of any issues or problems in the store. *Id.* Ultimately, because there did not appear to be any significance to the green and red twist tie figures and there

4

was no evidence of problematic conduct or a troubling atmosphere at the store, Stop & Shop took no further action. *Id.*, ¶ 10.

As the complete recounting of this incident reveals, the fact that someone hung three stick figures made from twist ties at Rosemond's new store, Store 94, has absolutely no bearing on Stop & Shop's motion for summary judgment. The figures themselves, which were made from red and green twist ties, had no racial overtones and did not constitute racially harassing conduct. Further, Rosemond never saw the stick figures hung in the store and was not even aware of them until Stop & Shop brought them to his attention in the course of its investigation. He, therefore, did not experience any racially harassing conduct, even if they could be construed as such, which they cannot. Finally, and most important, Rosemond, by his own admission, had not experienced any conduct at Store 94, his new store, that he believed was troubling, much less racially harassing. Given his statements to the Stop & Shop employees who investigated this incident, it is clear that Rosemond's submission of this intentionally vague affidavit is nothing more than a contrived attempt to create the appearance of a racial incident when he is fully aware none occurred.

Moreover, even if this incident were sufficient to connote some sort of racial animosity, it is not relevant to Rosemond's current claim. All the evidence establishes that this incident is unconnected to the incident that forms the basis of Rosemond's racial harassment claim which occurred on December 10, 2003 in Store 36. While Stop & Shop was not able to determine who hung the twist tie stick figures, there is no evidence (or even an allegation by Rosemond) that any of the individuals involved in the 2003 incident had any connection to the stick figures. Indeed, as has previously been established, Rosemond no longer works with those individuals, all of whom Stop & Shop transferred to different stores. Moreover, more than two years have

passed since December 10, 2003 and Rosemond makes no claim that anything untoward occurred between then and April 2006. As a result, the stick figures are, at most, an isolated incident – one that Rosemond did not experience first hand and that Stop & Shop investigated promptly.

In short, given the fact that (1) Rosemond never saw the stick figures hanging, (2) they are, at best, ambiguous, and (3) their appearance is temporally disconnected from the incident that forms the basis of Rosemond's claim, Rosemond's efforts to use this incident in opposing Stop & Shop's motion for summary judgment should be rejected.

## Conclusion

For the foregoing reasons, Stop & Shop respectfully requests that Rosemond's Affidavit be stricken, or, in the alternative, that the Court consider the Affidavit of Kenneth Burroughs, submitted herewith.

Respectfully submitted,

THE STOP & SHOP SUPERMARKET COMPANY LLC,

By its attorneys,

/s/ Brigitte M. Duffy
Lisa J. Damon (BBO # 558843)
Brigitte M. Duffy (BBO # 567724)
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
(617) 946-4800

Dated: May 22, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper will be sent to those indicated as not registered participants on May 22, 2006.

/s/ Brigitte Duffy