**UNPUBLISHED DECISION**

1 of 100 DOCUMENTS

NANCY K. GARRITY, JOANNE CLARK and ARTHUR GARRITY v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY

CIVIL ACTION NO. 00-12143-RWZ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

2002 U.S. Dist. LEXIS 8343; 146 Lab. Cas. (CCH) P59,541; 18 I.E.R. Cas. (BNA) 981

May 7, 2002, Decided

**DISPOSITION:** [*1] Judgment entered for defendant.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, former employees of defendant employer, an insurance company, claimed the employer invaded their privacy, unlawfully intercepted wire communications, wrongfully discharged, and defamed them. The employer moved for summary judgment.

**OVERVIEW:** The employees were fired after the employer examined e-mails they sent within the office. They believed that the personal e-mail correspondence they sent and received was private. The court held that the relevant inquiry was whether the expectation of privacy was reasonable. Any reasonable expectation on the part of the employees was belied by the record. Their rationales for their expectation in privacy were not, as a matter of law, sufficient to defeat summary judgment. Even if the employees had a reasonable expectation of privacy in their work e-mail, the employer's legitimate business interest in protecting its employees from harassment in the workplace would likely have trumped the employees' privacy interests. Both Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and Mass. Gen. Laws. ch. 151B required the employer to take affirmative steps to maintain a workplace free of harassment and to investigate and take prompt and effective remedial action when potentially harassing conduct was discovered. Further, the act of "interception" could not proceed after the e-mail was received. Therefore, plaintiffs' wiretap claim failed as a matter of law.

**OUTCOME:** The employer's motion for summary judgment was granted.

LexisNexis(R) Headnotes

*Criminal Law & Procedure > Search & Seizure > Expectation of Privacy*
*Labor & Employment Law > Employee Privacy > Invasion of Privacy*
*Torts > Intentional Torts > Invasion of Privacy > Intrusion > General Overview*
[HN1] The relevant inquiry in an invasion of privacy case is whether the expectation of privacy was reasonable.

*Computer & Internet Law > Copyright Protection > Civil Infringement Actions > Defenses > General Overview*
*Labor & Employment Law > Employee Privacy > Invasion of Privacy*
*Torts > Intentional Torts > Invasion of Privacy > Intrusion > General Overview*
[HN2] Even in the absence of a company e-mail policy, employees do not have a reasonable expectation of privacy in their work e-mail: Once an employee has communicated an alleged unprofessional comment to a second person (e.g. his supervisor) over an e-mail system which is apparently utilized by the entire company, any reasonable expectation of privacy is lost.

*Computer & Internet Law > Copyright Protection > Civil Infringement Actions > Defenses > General Overview*
*Computer & Internet Law > Privacy & Security > Company Communications*
*Torts > Intentional Torts > Invasion of Privacy > Intrusion > General Overview*

2002 U.S. Dist. LEXIS 8343, *; 146 Lab. Cas. (CCH) P59,541;
18 I.E.R. Cas. (BNA) 981

[HN3] An employee has no reasonable expectation of privacy in e-mail messages transmitted over the network that are at some point accessible by a third-party.

*Computer & Internet Law > Copyright Protection > Civil Infringement Actions > Defenses > General Overview*
*Labor & Employment Law > Employee Privacy > Invasion of Privacy*
*Torts > Intentional Torts > Invasion of Privacy > Intrusion > General Overview*
[HN4] An employee's e-mail messages stored in personal folders, first transmitted over the network and at some point accessible by a third party, even with a personal password, do not manifest or give rise to a reasonable expectation in privacy in their contents such that an employer is precluded from reviewing the messages.

*Computer & Internet Law > Civil Actions > General Overview*
*Labor & Employment Law > Discrimination > Gender & Sex Discrimination > General Overview*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Correction & Prevention*
[HN5] Both Title VII of the Civil Rights Act of 1964, *42 U.S.C.S. § 2000e* et seq., and Mass. Gen. Laws. ch. 151B require employers to take affirmative steps to maintain a workplace free of harassment and to investigate and take prompt and effective remedial action when potentially harassing conduct is discovered. E-mail transmission of sexually explicit and offensive material such as jokes, pictures, and videos, exposes the employer to sexual harassment and sex discrimination lawsuits. Therefore, once an employer receives a complaint about sexually explicit e-mails, it is required by law to commence an investigation.

*Computer & Internet Law > Copyright Protection > Civil Infringement Actions > Defenses > General Overview*
*Computer & Internet Law > Privacy & Security > Electronic Communications Privacy Act*
*Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Illegal Eavesdropping > Elements*
[HN6] Mass. Gen. Laws. ch. 272 § 99 prohibits certain interceptions of wire and oral communications. The reading of e-mails, after they have been transmitted to an employee recipient, does not constitute "interception" within the wiretap statute.

*Computer & Internet Law > Copyright Protection > Civil Infringement Actions > Defenses > General Overview*
*Computer & Internet Law > Privacy & Security > Electronic Communications Privacy Act*
*Computer & Internet Law > Privacy & Security > Invasion of Privacy*
[HN7] The Electronic Communications Privacy Act of 1986, *18 U.S.C.S. § § 2510* et seq. and 2701 et seq., requires that the acquisition of electronic communications occur during transmission. That is, the act of "interception" cannot proceed after the e-mail is received.

*Communications Law > Privacy > Electronic Communications Privacy Act*
*Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Illegal Eavesdropping > General Overview*
*Criminal Law & Procedure > Search & Seizure > Electronic Eavesdropping > General Overview*
[HN8] The Massachusetts Supreme Judicial Court has instructed courts to interpret the Massachusetts wiretap statute, Mass. Gen. Laws. ch. 272 § 99, in accordance with the construction given to the Electronic Communications Privacy Act of 1986, *18 U.S.C.S. § § 2510* et seq. and 2701 et seq., by federal courts.

*Computer & Internet Law > Copyright Protection > Civil Infringement Actions > Defenses > General Overview*
*Computer & Internet Law > Internet Business > General Overview*
*Criminal Law & Procedure > Criminal Offenses > Fraud > Computer Fraud > General Overview*
[HN9] An automatic e-mail back-up system is protected under the ordinary business exemption and therefore does not constitute an unlawful interception in violation of Mass. Gen. Laws. ch. 272 § 99.

*Governments > Legislation > Statutory Remedies & Rights*
*Labor & Employment Law > Wrongful Termination > Public Policy*
[HN10] A common law public policy claim cannot lie in a wrongful discharge case where the plaintiff has an available state statutory claim.

*Labor & Employment Law > Disability & Unemployment Insurance > Disability Benefits > General Overview*

Case 3:04-cv-30072-MAP    Document 59-3    Filed 05/22/2006    Page 4 of 7

Page 3

2002 U.S. Dist. LEXIS 8343, *; 146 Lab. Cas. (CCH) P59,541;
18 I.E.R. Cas. (BNA) 981

*Labor & Employment Law > Discrimination > Retaliation > Statutory Application > Employee Retirement Income Security Act (ERISA)*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Plan Termination*

[HN11] Section 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1140, prohibits employers from discharging any employee for exercising any right to which he is entitled under the provisions of the employee benefit plan. Plaintiffs must set forth evidence to support a finding that a defendant engineered termination to deprive them of ERISA benefits. To survive summary judgment a plaintiff must present evidence of the employer's specific intent to violate ERISA.

*Civil Procedure > Summary Judgment > Supporting Materials > Affidavits*

[HN12] Supporting affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Fed. R. Civ. P. 56(e).

*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Coverage & Definitions > Sexual Harassment*
*Torts > Intentional Torts > Defamation > Defenses > Privileges > Qualified Privileges*
*Torts > Intentional Torts > Defamation > Procedure*

[HN13] An employer is entitled to a conditional privilege which insulates it from liability for stating that employees were terminated for sending and receiving sexually lewd, harassing and defamatory and sexually explicit e-mails. a qualified or conditional privilege obtains where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it. Employers have a conditional privilege to disclose defamatory information about employees and former employees. The privilege protects an employer's statements of opinion and facts, and statements that an employer reasonably believes to be true. It also extends to information which may turn out not to be true concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job. In order to defeat the employer's conditional privilege, the employee bears the burden of proving that the employer abused the privilege by recklessly publishing the defamatory facts.

**COUNSEL:** For NANCY K. GARRITY, JOANNE CLARKE, ARTHUR GARRITY, Plaintiffs: John G. Coster, Boston, MA.

For JOHN HANCOCK MUTUAL LIFE INSURANCE CO, Defendant: Neil Jacobs, Jessica Foster, Hale & Dorr, Boston, MA.

**JUDGES:** RYA W. ZOBEL, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** RYA W. ZOBEL

**OPINION:**

MEMORANDUM OF DECISION

May 7, 2002

ZOBEL, D.J.

Plaintiffs Nancy Garrity ("Mrs. Garrity") and Joanne Clark ("Ms. Clark") were employees of John Hancock Mutual Life Insurance Company ("John Hancock") for twelve and two years, respectively, until their termination in July of 1999. According to the defendant, plaintiffs regularly received on their office computers, sexually explicit e-mails from internet joke sites and other third parties, including Mrs. Garrity's husband, Arthur Garrity ("Mr. Garrity"), which they then sent to coworkers. These facts are undisputed: A fellow employee complained after receiving one such e-mail. Hancock promptly commenced an investigation of plaintiffs' e-mail folders, as well as the folders of those with whom they e-mailed on a regular basis. Based upon the information gleaned from this investigation, Hancock determined that plaintiffs [*2] had violated its E-Mail Policy, which states, in relevant part:

> . Messages that are defamatory, abusive, obscene, profane, sexually oriented, threatening or racially offensive are prohibited.
>
> . The inappropriate use of E-mail is in violation of company policy and may be subject (sic) to disciplinary action, up to and including termination of employment.
>
> . All information stored, transmitted, received, or contained in the company's E-mail systems is the property of John Hancock. It is not company policy to intentionally inspect E-mail usage. However, there may be business or legal situations that necessitate company review of E-mail messages and other documents.

Case 3:04-cv-30072-MAP   Document 59-3   Filed 05/22/2006   Page 5 of 7

Page 4

2002 U.S. Dist. LEXIS 8343, *; 146 Lab. Cas. (CCH) P59,541;
18 I.E.R. Cas. (BNA) 981

. Company management reserves the right to access all E-mail files.

During plaintiffs' employment, defendant periodically reminded its employees that it was their responsibility to know and understand the e-mail policy. In addition, defendant warned them of several incidents in which employees were disciplined for violations. Plaintiffs assert that the e-mail policy is almost impossible to locate on Hancock's intranet system, and even harder to decipher. In addition, they contend that the reminders [*3] sent by defendant during plaintiffs' employment did not accurately communicate its e-mail policy. They also dispute defendant's characterization of the e-mails in question as sexually explicit, or in any way in violation of the policy language. Upon review of the e-mails in question, however, there can be no question that they are sexually explicit within the meaning of defendant's e-mail policy. Regardless, plaintiffs assert that Hancock led them to believe that these personal e-mails could be kept private with the use of personal passwords and e-mail folders. Their complaint sets forth claims based on invasion of privacy, unlawful interception of wire communications, wrongful discharge in violation of public policy, wrongful discharge to deprive plaintiffs of benefits, and defamation. Defendant filed a Motion for Summary Judgment on all counts.

I. Invasion of Privacy

Plaintiffs' opposition states that "it is uncontested . . . that Ms. Garrity, Mr. Garrity and Ms. Clarke believed that the personal e-mail correspondence they sent and received was private." While that may be true, [HN1] the relevant inquiry is whether the expectation of privacy was reasonable. See *Tedeschi v. Reardon, 5 F. Supp. 2d 40, 46 (D. Mass. 1998)*. [*4] Any reasonable expectation on the part of plaintiffs is belied by the record and plaintiffs' own statements. According to deposition testimony, Mrs. Garrity and Ms. Clark assumed that the recipients of their messages might forward them to others. Likewise, Mr. Garrity testified that the e-mails he sent to his wife would eventually be sent to third parties. Although there is a dearth of case law on privacy issues with regard to office email, *Smyth v. Pillsbury Co., 914 F. Supp. 97 (E.D. Pa. 1996)* is instructive here. In Smyth, the court held that [HN2] *even in the absence* of a company e-mail policy, plaintiffs would not have had a reasonable expectation of privacy in their work e-mail:

> Once plaintiff communicated the alleged unprofessional comments to a second person (his supervisor) over an e-mail system which was apparently utilized by the entire company, any reasonable expectation of privacy was lost. Significantly, the defendant did not require plaintiff, as in the case of urinalysis or personal property search to disclose any personal information about himself. Rather, plaintiff voluntarily communicated the alleged unprofessional comments over the company [*5] e-mail system. We find no privacy interests in such communications.

*Smyth, 914 F. Supp. at 101;* see also *McLaren v. Microsoft Corp., 1999 Tex. App. LEXIS 4103, 1999 WL 339015, at *4 (Tx. Ct. App. 5th Dist. May 28, 1999)*(employee [HN3] had no reasonable expectation of privacy in e-mail messages transmitted over the network that "were at some point accessible by a third-party"). Both Mrs. Garrity and Ms. Clarke admit that they knew defendant had the ability to look at e-mail on the company's intranet system, and knew they had to be careful about sending e-mails. Nevertheless, they claim that their e-mails were private because the company had instructed them on how to create passwords and personal e-mail folders. This precise argument was flatly rejected in McLaren:

> According to [plaintiff], his practice was to store e-mail messages in "personal folders." Even so, [HN4] any e-mail messages stored in [plaintiff's] personal folders were first transmitted over the network and were at some point accessible by a third party. Given these circumstances, we cannot conclude that [plaintiff], even by creating a personal password, manifested -- and [defendant] recognized -- [*6] a reasonable expectation in privacy in the contents of e-mail messages such that [defendant] was precluded from reviewing the messages.

*McLaren, 1999 WL 339015 at *4.* Plaintiffs' rationales for their expectation in privacy are not, as a matter of law, sufficient to defeat summary judgment.

Even if plaintiffs had a reasonable expectation of privacy in their work e-mail, defendant's legitimate business interest in protecting its employees from harassment in the workplace would likely trump plaintiffs' privacy interests. [HN5] Both Title VII of the Civil Rights Act of 1964 and M.G.L. c. 151B require employers to take affirmative steps to maintain a workplace free of harassment and to investigate and take prompt and effective remedial action when potentially harassing conduct is

Case 3:04-cv-30072-MAP    Document 59-3    Filed 05/22/2006    Page 6 of 7

Page 5

2002 U.S. Dist. LEXIS 8343, *; 146 Lab. Cas. (CCH) P59,541;
18 I.E.R. Cas. (BNA) 981

discovered. See *Faragher v. City of Boca Raton*, 524 U.S. 775, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998); *College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination*, 400 Mass. 156, 163-167, 508 N.E.2d 587 (1987); see also *Autoli ASP, Inc. v. Dep't of Workforce Services*, 2001 UT App 198, 29 P.3d 7, 12-13 (Utah App. Ct. 2001) [*7] ("e-mail transmission of sexually explicit and offensive material such as jokes, pictures, and videos, exposes the employer to sexual harassment and sex discrimination lawsuits . . . ."). Therefore, once defendant received a complaint about the plaintiffs' sexually explicit e-mails, it was required by law to commence an investigation.

II. Massachusetts Wiretap Statute

Plaintiffs claim that, by reading their e-mails, defendant violated [HN6] *M.G.L. c. 272 § 99*, which prohibits certain interceptions of wire and oral communications. Because the reading of e-mails, after they have been transmitted to the recipient, does not constitute "interception" within the wiretap statute, plaintiffs' claim fails. Although there is no case law directly on point under the Massachusetts wiretap statute, the conclusion set forth in *Eagle v. Investment Serv. Corp. v. Tamm*, 146 F. Supp. 2d 105 (D. Mass. 2001), is persuasive. The Eagle court held that [HN7] the Electronic Communications Privacy Act of 1986, *18 U.S.C. §§ 2510* et seq. and 2701 et. seq. (the "ECPA"), n1 requires that the acquisition of electronic communications occur *during transmission*. *Id. at 111-113* [*8] (relying heavily on *Steve Jackson Games Inc. v. United States Secret Serv.*, 36 F.3d 457, 462 (5th Cir. 1994)). That is, the act of "interception" cannot proceed after the e-mail is received, *146 F.S.2d at 113*, as is the case here. Therefore, plaintiffs' wiretap claim fails as a matter of law.

n1 [HN8] The Supreme Judicial Court has instructed courts to interpret the Massachusetts wiretap statute "in accordance with the construction given to the [ECPA] by Federal courts." *O'Sullivan v. NYNEX Corp.*, 426 Mass. 261, 264 f.5, 687 N.E.2d 1241 (1997)(citing *Commonwealth v. Vitello*, 367 Mass. 224, 251, 327 N.E.2d 819 (1975)).

Even if an employer's reading of employee e-mails constituted "interception," within the meaning of the statute, at least one Massachusetts court has held that [HN9] an automatic e-mail back-up system is protected under the ""ordinary business exemption" and therefore "does not constitute an unlawful interception in violation of *G.L. c. 272 § 99*." [*9] *Restuccia v. Burk Tech., Inc.*, 1996 Mass. Super. LEXIS 367, 1996 WL 1329386 at *2-3 (Mass. Super. Aug. 13, 1996).

III. Violation of Public Policy

Plaintiffs allege, in their Complaint, that defendant's termination of their employment constitutes a violation of the "public policy of the Commonwealth of Massachusetts, which guarantees to every citizen the right to be free from unreasonable, substantial or serious inferences with their privacy, pursuant to *G.L. c. 214 § 1B* and *G.L. c. 272 § 99* . . . ." This argument is not only duplicative of the privacy and wire tap claims dismissed above, but it is misplaced. [HN10] A common law public policy claim cannot lie in a wrongful discharge case where the plaintiff has an available state statutory claim. See *Melley v. Gillette Corp.*, 19 Mass. App. Ct. 511, 475 N.E.2d 1227 (1986), aff'd, 397 Mass. 1004, 491 N.E.2d 252 (1986)(age bias claim preempted by M.G.L. c. 151B); see also 45 Mass. Practice § 3.11 The Public Policy Doctrine--Statutory Preemption of Public Policy Claims (2002). Thus, plaintiffs' ability to assert their rights under state privacy and wiretap statutes precludes any invocation of the public policy [*10] doctrine.

IV. ERISA

Plaintiffs claim that defendant terminated their employment solely to minimize the anticipated cost of reducing its work force, in violation of section 510 of ERISA, *29 U.S.C. § 1140*. [HN11] Section 510 prohibits employers from discharging any employee "for exercising any right to which he is entitled under the provisions of the employee benefit plan." Id. Plaintiff, however, sets forth no evidence to support a finding that defendant engineered their terminations to deprive them of ERISA benefits. See *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 296 (7th Cir. 1998) (summary judgment affirmed for employer, where plaintiff "failed to point . . . to any evidence in the record in support of her conclusion that her supervisors even considered, much less relied on, her past or future receipt of short-term disability benefits in their termination decision"); *Owens v. Storehouse, Inc.*, 984 F.2d 394 (11th Cir. 1993)("to survive summary judgment . . . a plaintiff must present evidence of the employer's specific intent to violate ERISA")(citation omitted). Plaintiffs offered their own affidavits in which they [*11] describe Hancock's investigation of other employees, layoffs, and provide speculative conclusions about the events surrounding their termination. None of their statements are based on first-hand knowledge or supporting documentation. All are thus inadmissible. See *Fed. R. Civ. P. 56(e)* [HN12] ("supporting affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall

Case 3:04-cv-30072-MAP    Document 59-3    Filed 05/22/2006    Page 7 of 7

Page 6

2002 U.S. Dist. LEXIS 8343, *; 146 Lab. Cas. (CCH) P59,541;
18 I.E.R. Cas. (BNA) 981

show affirmatively that the affiant is competent to testify to the matters stated therein"). n2 The fact that defendant reduced its work force four months after Plaintiffs' termination is, without more, wholly insufficient to defeat summary judgment on their ERISA claim.

n2 Defendant's motion to strike portions of the affidavits is allowed.

V. Defamation

The last count asserts that two Hancock supervisors defamed plaintiffs by telling former co-workers, and Hancock employees in other departments, that plaintiffs were terminated for sending and receiving "sexually lewd, harassing [and] [*12] defamatory" and "sexually explicit" e-mails. Even if the statements made by defendant met the required elements of a defamation claim, [HN13] defendant is entitled to a conditional privilege which insulates it from liability for these statements. See *Foley v. Polaroid Corp., 400 Mass. 82, 94-95, 508 N.E.2d 72 (1987)*(qualified or conditional privilege "where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it."); *Putnam v. Bradlees, Inc., 1995 WL 692687* at *2 (Mass. App. Div. Nov. 17, 1995)(employers have a conditional privilege "to disclose defamatory information about employees and former employees"). The privilege "protects an employer's statements of opinion and facts, and statements that an employer reasonably believes to be true." Putnam, at *2. It also extends to "information which may turn out not to be true concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." *Dexter's Hearthside Restaurant v. Whitehall Co., 24 Mass. App. Ct. 217, 222, 508 N.E.2d 113 (1987)*. [*13] In order to defeat the employer's conditional privilege, the employee bears the burden of proving that the employer abused the privilege by recklessly publishing the defamatory facts. *Bratt v. Int'l Bus. Mach. Corp., 392 Mass. 508, 514, 467 N.E.2d 126 (1984); Foley, 400 Mass. at 95*. Plaintiffs have not done so here. Rather, plaintiffs simply state that "no legitimate business purpose was served by disseminating these statements among such a large group of employees." To the contrary, all Hancock employees are subject to its e-mail policy. Therefore, defendant had an obvious legitimate business purpose, as to *all employees*, if it so chose -- to warn them and thereby prevent any recurrence of the events that led to this law suit. Accordingly, defendant's motion for summary judgment is allowed. Judgment may be entered for defendant.

May 7, 2002

DATE

RYA W. ZOBEL

UNITED STATES DISTRICT JUDGE