**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Civil Action No. 04-30072-MAP

_____

**JOSEPH ROSEMOND**                          )
                                  **Plaintiff**          )
                                                   )
**v.**                                              )
                                                   )
**STOP AND SHOP SUPERMARKET**          )
**COMPANY,**                                 )
                                  **Defendant**          )
_____)

**SECOND AMENDED COMPLAINT**

**PARTIES**

1.    The Plaintiff, Joseph Rosemond ("Mr. Rosemond") is a natural person with a
      residence in Springfield, Hampden County, Massachusetts.

2.    The Defendant, Stop and Shop Supermarket Company ("Defendant"), is a
      foreign corporation organized under the laws of Delaware, with a principal
      Massachusetts office at 1385 Hancock Street, Quincy, Norfolk County,
      Massachusetts, and store locations throughout the Commonwealth of
      Massachusetts.

**JURISDICTION**

3.    Jurisdiction is pursuant to 42 U.S.C. §2000e-5(f)(3), 28 U.S.C. §1331, and 28
      U.S.C. §1376.

4.    Venue is pursuant to 42 U.S.C. §2000e-5(f)(3).

5.    On or about December 16, 2003, Mr. Rosemond filed a charge of discrimination
      with the Massachusetts Commission Against Discrimination and the Equal
      Employment Opportunity Commission.

1

6.   On March 4, 2004, Mr. Rosemond requested permission to withdraw his charge of discrimination from the Massachusetts Commission Against Discrimination. More then ninety (90) days have elapsed since the filing of the charge of discrimination.

7.   Mr. Rosemond received his release of jurisdiction letter from the Equal Employment Opportunity Commission on April 1, 2004.

8.   Mr. Rosemond filed a Complaint on this matter on April 7, 2004

## FACTS

9.   Mr. Rosemond is African American.

10.   Mr. Rosemond has been employed with the Defendant since July of 1994.

11.   During the summer and winter of 2003, Mr. Rosemond was a Customer Service Manager in the Defendant's store located at 672 Memorial Drive in Chicopee, Massachusetts (the "Chicopee Store").

12.   During the summer of 2003, Mr. Rosemond attended a meeting in the Chicopee Store with his supervisor, Mike Leach.

13.   Mr. Leach was the Manager of the Chicopee Store.

14.   Mr. Rosemond brought coffee to the meeting for himself and Mr. Leach.

15.   When Mr. Rosemond arrived at the meeting, Mr. Leach and the manager of the Chicopee Store Bake Shop, David Taranova were in attendance.

16.   Because Mr. Rosemond was not aware that Mr. Taranova would be attending the meeting, he did not bring coffee for Mr. Taranova.

17.   Upon realizing that Mr. Rosemond did not have coffee for him, Mr. Taranova exclaimed, "Where's my coffee? what am I, Black?"

18.   Although Mr. Leach heard Mr. Taranova's statement, Mr. Leach did not reprimand Mr. Taranova or indicate in any way that the statement was inappropriate.

19.   After the meeting, Mr. Rosemond made a complaint to Mr. Leach about Tavanova's statement.

20.    In the Fall of 2003, Mr. Taranova approached Mr. Rosemond and said that the Defendant would not have as many problems if it did not have so many minorities in management positions.

21.    Mr. Rosemond was offended by Mr. Taranova's statements.

22.    On the morning of December 10, 2003, Mr. Rosemond arrived at the Chicopee Store and discovered a noose hanging from the ceiling of his office.

23.    Because a noose is a symbol and instrument of racially motivated violence against African Americans, the noose made Mr. Rosemond feel offended, threatened, and intimidated.

24.    Mr. Rosemond was the only African American that worked in this office.

25.    Mr. Rosemond shared his office with Marcy Wutka, a Caucasian Assistant Store Manager.

26.    Marcy Wutka was on vacation on December 10, 2003.  She had been on vacation for several days prior to December 10, 2003.  She was scheduled to be on vacation for several days following December 10, 2003.

27.    Mr. Rosemond complained about the noose to Brian Whalen, the store manager, on December 10, 2003.

28.    Initially, Mr. Whalen did not appear to take Mr. Rosemond's complaint seriously or indicate that he would take any action as a result of Mr. Rosemond's complaint.

29.    Because it did not appear that Mr. Whalen was going to take any action, Mr. Rosemond explained his serious distress regarding the noose to Mr. Whalen.

30.    After Mr. Rosemond expressed his distress, Mr. Whalen asked the Chicopee Store's security staff to review the video surveillance tapes.

31.    The video surveillance tapes revealed that three individuals from the Chicopee Store Meat Department went into Mr. Rosemond's office before Mr. Rosemond arrived at the Chicopee Store on December 10, 2003.

32.    The surveillance video showed that Charles Ingalls, a meat cutter, and Jeramie Rankin, a seafood clerk, entered Mr. Rosemond's office first.

3

33.    Stanley Kaletta, the Manager of the Chicopee Store Meat Department entered Mr. Rosemond's office either while the noose was being hung or shortly thereafter.

34.    Mr. Rankin and Mr. Ingalls admitted that they hung the noose in Mr. Rosemond's office.

35.    Mr. Rankin and Mr. Ingalls claimed that the noose was merely a joke that was intended for the vacationing, Caucasian Marcy Watka.

36.    Although Mr. Kaletta may not have participated in the hanging of the noose, he was aware of the fact that the noose had been hung in Mr. Rosemond's office.

37.    Although Mr. Rosemond has expressed his concerns about the noose incident to several of Defendant's upper-level management employees, Defendant has not expressed any regret or apology for the behavior of Mr. Kaletta, Mr. Rankin or Mr. Ingalls.

38.    Instead, Defendant has dismissed Mr. Rosemond's concerns and asserted that the noose was intended for his Caucasian officemate, Marcy Wutka.

39.    After the investigation was concluded, Scott Ziter, the head of the Chicopee Store Security, told Mr. Rosemond that he did not think that the three employees should be terminated.

40.    Defendant did not terminate any of the employees involved in the noose incident.

41.    Defendant suspended Mr. Rankin and Mr. Ingalls without pay for two and a half weeks and then allowed them to return to work.

42.    Mr. Rankin and Mr. Ingalls were assigned to different stores upon their return.

43.    Defendant spoke to Mr. Kaletta about the incident and placed a note about the incident in his personnel file.

44.    Mr. Kaletta remained a manager at the Chicopee Store.

45.    No other action was taken against Mr. Kaletta, Mr. Rankin or Mr. Ingalls.

46.    Defendant regularly terminates employees upon discovering offenses that are far less severe than the physically threatening and racially motivated actions taken by Mr. Kaletta, Mr. Rankin or Mr. Ingalls against Mr. Rosemond.

4

47.  As a result of the noose incident, Mr. Rosemond suffered severe anxiety and depression and sought treatment from his doctor.

48.  Although Mr. Rosemond wanted to return to work, he had been unable to return to work due to the anxiety and depression caused by the noose incident and the Defendant's failure to remove from the workplace the employees who engaged in this racially motivated threat until July 2004.

49.  Upon his return to work, Mr. Rosemond was assigned to the West Springfield store.

50.  Prior to initiating this cause of action, Mr. Rosemond had not been subjected to any discipline by the Defendant.

51.  In April, 2006, Mr. Rosemond was interviewed by Ken Burroughs, the District Manager and Julie Pinard from Human Resources.

52.  Mr. Burroughs and Ms. Pinard asked Mr. Rosemond whether he had an inappropriate relationship with a cashier, Jessica Fisher.

53.  The investigation was motivated by another cashier John Young spreading rumors of an inappropriate relationship between Mr. Rosemond and Ms. Fisher.

54.  Mr. Rosemond confronted Mr. Young and asked whether he was spreading these rumors.  Mr. Young denied doing so.

55.  Mr. Rosemond was then investigated for "threatening" Mr. Young.

56.  In May, 2006, Mr. Rosemond was transferred to the Boston Road, Springfield Store.

57.  On May 22, 2006, Mr. Rosemond received a final warning for threatening Mr. Young and for talking with Ms. Fisher in his office without a witness.

## COUNT I – RACE DISCRIMINATION
## 42 U.S.C. § 2000e et seq.

58.  Paragraphs 1 through 57 are repeated, reiterated and re-alleged as if fully set forth herein.

59.  The Defendant, by the above-described conduct, discriminated against Mr.

Rosemond based on his race in violation of 42 U.S.C. § 2000e et seq.

60.     As a direct and proximate result of such conduct, Mr. Rosemond has suffered, and continues to suffer, from damages including a loss of pay and benefits, damages resulting from emotional distress and attorneys' fees.

## COUNT II - RACIAL HARASSMENT
## 42 U.S.C. §2000e et seq.

61.     Paragraphs 1 through 60 are repeated, reiterated and re-alleged as if fully set forth herein.

62.     The Defendant, by the above described conduct, subjected Mr. Rosemond to racial harassment, in violation of 42 U.S.C. §2000e et seq.

63.     As a direct and proximate result of such conduct, Mr. Rosemond has suffered, and continues to suffer, from damages including a loss of pay and benefits, damages resulting from emotional distress and attorney's fees.

## COUNT III - RACE DISCRIMINATION
## Mass. Gen. Laws ch. 151B

64.     Paragraphs 1 through 63 are repeated, reiterated and re-alleged as if fully set forth herein.

65.     The Defendant, by the above-described conduct, discriminated against Mr. Rosemond based on his race in violation of Massachusetts General Laws ch. 151B.

66.     As a direct and proximate result of such conduct, Mr. Rosemond has suffered, and continues to suffer, from damages including a loss of pay and benefits, damages resulting from emotional distress and attorney's fees.

## COUNT IV - RACIAL HARASSMENT
## Mass. Gen. Laws ch. 151B

67.     Paragraphs 1 through 66 are repeated, reiterated and re-alleged as if fully set forth herein.

68.    The Defendant, by the above-described conduct, subjected Mr. Rosemond to racial harassment, in violation of Massachusetts General Laws ch. 151B.

69.    As a direct and proximate result of such conduct, Mr. Rosemond has suffered, and continues to suffer, from damages including a loss of pay and benefits, damages resulting from emotional distress and attorney's fees.

## COUNT V - RETALIATION
## 42 U.S.C. §2000e - 3 et seq.

70.    Paragraphs 1 through 69 are repeated, reiterated and re-alleged as if fully set forth herein.

71.    The Defendant, by the above described conduct retaliated against  Mr. Rosemond in violation of 42 U.S.C. §2000e-3 et seq.

72.    As a direct and proximate result of such conduct, Mr. Rosemond has suffered and continues to suffer from damages including but not limited to loss of opportunity, emotional distress and attorneys' fees.

## COUNT VI - RETALIATION
## Mass. Gen. Laws ch. 151B

73.    Paragraphs 1 through 72 are repeated, reiterated and re-alleged as if fully set forth herein.

74.    The Defendant, by the above described conduct retaliated against  Mr. Rosemond in violation of Mass. Gen. Laws ch. 151B(4).

75.    As a direct and proximate result of such conduct, Mr. Rosemond has suffered and continues to suffer from damages including loss of opportunity, emotional distress and attorneys' fees.

WHEREFORE, the Plaintiff, Joseph Rosemond, respectfully requests:

(a)    That judgment enter in his favor on each count;

(b)    Damages be assessed against the Defendant under each count of the Complaint, including, but not limited to, loss of pay and damages resulting

from emotional distress;

(c)     Multiple or punitive damages;

(d)     His attorneys' fees;

(e)     Interest and costs;

(f)     Purging of his personnel file; and

(g)     For such other relief as this Court deems just and appropriate.


Respectfully submitted,
Plaintiff, Joseph Rosemond,
By His Attorney,


/s/ Tani E. Sapirstein
Tani E.  Sapirstein
BBO #236850
SAPIRSTEIN & SAPIRSTEIN, P.C.
1341 Main Street - 3rd Floor
Springfield, MA 01103
Tel:    (413)  827-7500
Dated: May 25, 2006          Fax:    (413)  827-7797

8

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the following via first class mail, postage prepaid to:

Lisa J. Damon, Esq.
Brigitte Duffy, Esq.
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028

    /s/ Tani E. Sapirstein
Tani E. Sapirstein

Dated: May 25, 2006

K:\CASEFILE\ROSEMOND\2nd Amended Complaint.wpd