## MEMORANDUM

**TO:**       JOSEPH ROSEMOND
**FROM:**     KENNETH BURROUGHS
**SUBJECT:**  FINAL WARNING
**DATE:**     6/16/2006

This document is a final warning and was presented to Joe Rosemond during a meeting on May 22, 2006 with Ken Burroughs and Dale Duquette.

Findings

On April 21, 2006, Julie Pinard and I began an investigation into a complaint made by a part-time cashier named John Young in the West Springfield store. John alleged that Joe Rosemond had threatened him and treated him inappropriately. During the investigation, we received information that suggested that Joe might be involved in a relationship with Jessica Fisher, a part-time cashier in the store. As a result, our investigation expanded to address that issue as well.

The investigation revealed that on April 13, 2006, Joe summoned John Young to his office for a meeting. Joe had previously been instructed not to engage in one on one meetings with associates behind closed doors. During the April 13 meeting, Joe accused John of starting rumors that he (Joe) and Jessica Fisher were involved in a relationship. During the conversation, John denied the accusation, however John stated that Joe said to him, "Trust me, if it were true, you would not want to see the mean side of Joe Rosemond." John brought the matter to the attention of management.

We first interviewed Joe on April 25, 2006. During this interview, we told Joe that it was important for him to be open and truthful about the matter. When we presented him with John's complaint, Joe admitted that he had confronted John about the alleged relationship with Jessica and that John knew he (Joe) was "pissed." Joe stated that he did not yell, but John could tell he was upset. Joe stated that he told John that he did not like people interfering in his personal life. Joe admitted that he told John that "there is a Joe Rosemond that you don't want to see," and to stay out of his personal life. We told Joe that he should have brought his concerns about John Young to Paul Thibeault, the Store Manager. Joe acknowledged that he was previously told that he should bring the Store Manager into issues that arise, especially of this nature. [For example, on one occasion Jessica and Joe were in the manager's office alone and Jessica was seen later leaving the office in tears. Joe had previously been warned to avoid that type contact with associates].

When Joe was asked specifically about his relationship with Jessica and his contact with her outside of the office, he stated that he had only obtained some nursing books for her, but other than that had not had personal contact with her. At the conclusion of the first interview, we instructed Joe to keep our conversation with him confidential and not to discuss it with anyone.

In the course of the investigation, it became clear that Joe's explanation of events was contradicted by others. Multiple witnesses interviewed corroborated that Joe and Jessica did have the type of personal contact that Joe had denied having in his initial interview. For example, Joe initially stated that he had no contact with Jessica outside of work. In contradiction to that, an associate witnessed Jessica and Joe together at a bar called Cobalt. On another occasion, they observed and heard Jessica calling and speaking to Joe on her cell phone outside of work. One witness stated she knew it was Joe because Jessica handed her the cell phone and she spoke to him. Both Joe and Jessica initially denied having each other's cell phone number. Information discovered during the investigation also revealed that Joe had been assisting Jessica in getting an apartment. One witness overheard the conversation between Jessica and Joe regarding the apartment and felt that Joe's actions were inappropriate.

During a second interview, when confronted with these inconsistencies, Joe admitted that he had in fact been with Jessica at a bar, but claimed that he just happened to run into Jessica at the bar. This explanation was not credible because the associate who witnessed them at the bar saw them sitting together. Joe also admitted that he had phone conversations with Jessica outside of work and that he attempted to get an apartment for her. When asked why he had not revealed these facts during the first interview he stated that he did not know.

During her second interview, Jessica also admitted that on at least one other occasion she and Joe had arranged to meet at a pool hall and that he had been assisting her in getting an apartment. Jessica also admitted that she and Joe discussed this matter after the first interview, despite instructions to not to do so. She told us that, during that conversation, Joe told her that he had admitted that the two of them had spent time together outside of outside of work, and suggested to that she should do the same.

Recommendation

There is very strong evidence to support the conclusion that Joe was not honest or forthcoming during the investigation regarding his involvement with Jessica, a subordinate under his management. He misled the company when he was specifically asked about his contacts with her outside of work. More troubling was the fact that he initiated conversations with Jessica about the investigation and his interview after the first round interviews with them, even though he had been instructed to keep the interview confidential and not discuss the matter with anyone. Joe's behavior in this matter demonstrates that he has a fundamental lack of understanding of his role as a management employee. Joe has been instructed on several occasions that he must not engage in one on one conversation with associates behind closed doors. In this instance,

he not only continued to do so, but he used that forum to intimidate an associate about his relationship with Jessica. More importantly, Joe's interactions with Jessica, his subordinate, were inappropriate. These incidents raise questions about Joe's ability to act effectively in a management capacity.

   As result of this incident, Joe will be transferred to Store #404 in Springfield. Joe is also being notified at this time that this document constitutes a final warning with respect to inappropriate conduct and that any further violations will lead to disciplinary action up to and including termination.