UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH ROSEMOND,<br>   Plaintiff,<br>v.<br><br>THE STOP AND SHOP SUPERMARKET<br>COMPANY LLC<br>   Defendant. | C.A. No. 04-CV-30072 (MAP) |

## DEFENDANT'S PRETRIAL MEMORANDUM

Pursuant to Local Rule 16.5(D) of the United States District Court for the District of Massachusetts and in compliance with the Court's Order of November 8, 2006, Defendant The Stop & Shop Supermarket Company LLC ("Defendant" or "Stop & Shop") hereby submits its Pretrial Memorandum in the above captioned action.

I. **Defendant's Concise Summary of the Evidence**

Plaintiff Joseph Rosemond ("Plaintiff" or "Rosemond") alleges race discrimination based upon racial harassment in violation of Title VII and M.G.L. chapter 151B. Rosemond has been a manager for Defendant since 1994. He became the Customer Service Manager at Defendant's Chicopee store in March 2003. In that capacity, he served as part of the store's management team with Store Manager Brian Whalen and the store's Perishable Manger, Marcy Wutka. Both Wutka and Rosemond reported directly to Whalen.

On the morning of December 10, 2003, Plaintiff arrived for work at Defendant's Chicopee store and headed to his desk. Plaintiff's desk and those of two colleagues were located in the open mezzanine area which also housed the store's time clock where hourly employees

clocked in to and off of their shifts. When Plaintiff reached the mezzanine, he observed a rope fashioned in the form of a noose hanging from the ceiling between the time clock and Wutka's desk.

Plaintiff complained to Whalen about the incident. Whalen informed Plaintiff that store security would review the security tapes to try to determine who hung the rope. Stop & Shop senior management launched a full scale investigation into the rope's hanging.

The investigation revealed that the rope had been hung by two hourly employees who found the already tied rope on Wutka's desk. The two hourly employees decided to hang the rope as a spontaneous practical joke intended for no one in particular. Stop & Shop disciplined the two hourly employees with unpaid suspensions, issued final written warnings that any infraction of company policy was grounds for immediate termination, required the men to attend sensitivity training, and transferred them to separate stores. The investigation further revealed that a non-exempt lead clerk observed the rope after it was hung, but failed to take the rope down or to notify management. The lead clerk received a final warning for his failure to act.

Rosemond took a paid, six-month leave of absence that began shortly after he observed the rope. Plaintiff notified Stop & Shop he was returning to work in June 2004.

Stop & Shop denies that it discriminated against Plaintiff or otherwise created a hostile work environment for which it is liable. Stop & Shop promptly investigated the hanging of the rope and took appropriate disciplinary action against those who participated in the incident.

### A. Evidence with Respect to Liability

    1. <u>Stop & Shop Did Not Know or Have Reason to Know of the Conduct</u>

Both Title VII and M.G.L. c. 151B permit liability for co-worker harassment only if Plaintiff can establish *both* that: 1) the employer knew or should have known of the harassing

conduct *and* 2) failed to implement prompt and appropriate action in response. Plaintiff cannot establish either of these elements. Stop & Shop will demonstrate that it had no knowledge of the events until Plaintiff informed his manager, Brian Whalen, and that once it was made aware, Stop & Shop behaved appropriately in its investigation and discipline of the offending employees.

2. <u>The Complained of Conduct was Neither Severe nor Persuasive</u>

To support his claim, Plaintiff must establish racially harassing conduct that is either so severe or so pervasive that the conduct alone creates a hostile work environment. A review of cases involving a singular act, not targeted at the complaining party demonstrates that Rosemond's complained of behavior was neither severe enough nor pervasive enough to ground a hostile work environment claim.

3. <u>Stop & Shop Took Prompt and Appropriate Remedial Action</u>

The chief measure of the adequacy of an employer's response is not the victim's own personal sense of justice, but whether the behavior that gave rise to the complaint has ceased and does not threaten to reoccur. This is particularly true where there is no prior history of workplace harassment. Moreover, juries may not second guess the adequacy of personnel decisions. Stop & Shop acted immediately upon learning of the rope's hanging and conducted two internal investigations into the incident. Those persons involved in the rope's hanging were disciplined and trained to ensure their behavior would not reoccur. As Plaintiff testified, no further conduct of this nature occurred after his initial complaint to Whalen. Stop & Shop, therefore, took prompt and appropriate remedial action.

    4.    <u>Stop & Shop's Response was Reasonable</u>

The issue of employer liability for co-worker harassment is essentially a question of negligence. Through discipline and training, Stop & Shop acted immediately to ensure that the employees involved in the rope incident would not engage in behavior that could be interpreted as harassing in the future. In so doing, Stop & Shop's remedial action was reasonably calculated to end the alleged harassment.

    **B.**    **Evidence with Respect to Damages**

    1.    <u>Plaintiff has No Economic Damages</u>

Plaintiff has represented that he will not seek economic damages. Nevertheless, should Plaintiff seek economic damages, Defendant will argue that Plaintiff has no claim for them because he received full salary throughout his six month short-term disability leave, returned to work when his short-term disability expired, and remains a full-time employee with full salary and benefits.

    2.    <u>Plaintiff is Not Entitled to Emotional Distress Damages</u>

Plaintiff is not entitled to emotional distress damages because he received compensation for any alleged damages he may have suffered in the form of a six month paid disability leave. Stop & Shop does not concede that Plaintiff suffered racial discrimination or experienced a hostile work environment. However, Stop & Shop was aware, through Plaintiff's own comments, that he was troubled by the rope incident. In an effort to support Plaintiff, Defendant provided him with a self-funded six month disability leave and offered him additional long term disability leave should he desire the leave to continue. Accordingly, Stop & Shop believes that it has compensated Plaintiff for any harm he may have experienced as a result of his observation of the rope.

II. **Facts Established by Pleadings, Admissions or Stipulation**

1. Plaintiff is an African-American male.

2. Plaintiff became a Stop & Shop employee in 1994 when he joined Stop & Shop as a member of its management team.

3. In December 2003, Plaintiff was the Customer Service Manager at the Chicopee store.

4. In December 2003, Plaintiff's desk was located in the mezzanine area.

5. In December 2003, Wutka had a desk in the mezzanine area.

6. On December 8, 2003, Plaintiff opened the internal mail pouch and observed that it contained a rope. Plaintiff believed the rope was part of the store's holiday decorations.

7. On December 10, 2003, Plaintiff observed a rope fashioned in the shape of a noose hanging next to Wutka's desk. The rope was not hanging above his desk.

8. On December 10, 2003, Plaintiff took photographs of the rope.

9. On December 10, 2003, Plaintiff took the rope down and placed the rope in his car along with the pictures he took of the rope hanging.

10. On December 10, 2003, Plaintiff spoke to Chicopee Store Manager Brian Whalen about the rope.

11. On December 10, 2003, Whalen initiated an investigation.

12. On December 10 and 11, 2003, Chicopee Store security staff and other Stop & Shop loss prevention managers reviewed video surveillance tapes as part of Whalen's investigation.

13. Upon learning of the rope incident on December 10, 2003, Brenda Broad, then Director of Human Resources, sent Jerry Bidwell, Human Resources Manager from the Company's North Haven, Connecticut District Headquarters, to the Chicopee store to assist with the investigation.

14. Bidwell arrived at the Chicopee store on December 11, 2003 and began his investigation.

15. On December 12, 2003 two employees, Charles Ingalls, Head Meat Cutter, and Jeramie Rankin, Seafood Clerk, admitted to hanging the rope.

16. A third employee, Stanley Kaletta, admitted seeing the rope.

17. On December 12, 2003, Stop & Shop suspended Ingalls and Rankin without pay pending further investigation.

18. On December 12, 2003, Stop & Shop gave Kaletta a written warning.

19. Stop & Shop issued Ingalls and Rankin each a final written warning and transferred them to other locations.

20. On December 18, 2003, Kathy Russello, Human Resource Director for Stop & Shop's New York division, commenced a second investigation.

21. After the rope incident, Stop & Shop provided Chicopee store employees with training.

22. After the rope incident, Plaintiff went on medical leave for approximately six months.

23. Plaintiff received full pay and benefits during his December 2003 – June 2004 short term disability leave.

24. In June 2004, Plaintiff informed Stop & Shop that he was returning to work.

25. In June 2004, Plaintiff became the Customer Service Manager at the Stop & Shop's West Springfield store.

### III. Contested Issues of Fact

Defendant contends that the following issues of fact are contested by the parties and reserves its right to amend same.

1. The parties dispute the December 10, 2003 mezzanine office layout.

2. The parties dispute where the rope hung from the ceiling on December 10, 2003.

3. The parties dispute whether Charles Ingalls knew Marcy Wutka was on vacation.

4. The parties dispute the amount of time Stanley Kalleta was in the office on the mezzanine on the morning of December 10, 2003.

5. The parties dispute whether Jeramie Rankin and Charles Ingalls received the Stop & Shop anti-harassment policies.

6. The parties dispute whether Stop & Shop followed its discipline policy regarding Charles Ingall's and Jeramie Rankin's involvement in the rope incident.

### IV. Jurisdictional Questions

The parties have no questions related to jurisdiction. Defendant reserves the right to amend this response.

### V. Questions Raised by Pending Motions

There are no pending motions.

## VI. Issues of Law and Including Evidentiary Questions

Defendant intends to raise the issues of law listed below and reserves the right to amend both its questions of law and the evidence it may seek to exclude.

### A. Questions of Law

1. Did Stop & Shop take reasonable measures in response to Plaintiff's complaint?

2. Is this single occurrence, not directed at Plaintiff, sufficient basis for plaintiff's hostile work environment claim?

### B. Exclusion of Evidence

1. Exclusion of Testimony Related to David Taranova

Plaintiff testified at deposition that he neither reported David Taranova's alleged comment to management, nor did he, as a member of the store's management team, reprimand Taranova for the comment. Rosemond's failure to report or otherwise respond to Taranova's comment precluded Stop & Shop from responding to the allegedly inappropriate behavior. Because Stop & Shop is only liable for Taranova's actions if it knew or should have known about his behavior, even assuming the singular comment was sufficient to ground a claim, Stop & Shop cannot be held responsible for its failure to respond to a situation it learned about three years after the fact. *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 873 (6th Cir. 1997). Further, Plaintiff cannot rely upon this testimony to substantiate his current claims because any claim that could arise from the alleged conduct is time barred. Moreover, introduction of testimony related to Taranova would only serve to confuse the jury and could unfairly prejudice Defendant in violation of FRE 403.

       2.       Disqualification of John Bracey as an Expert

Plaintiff's proposed expert, John Bracey, opines that "the placing of a hangman's noose in or near the home or workspace of an African American would be seen as an act of racial aggression and hostility." Mr. Bracey's proposed testimony is inappropriate under Rule 702 because the average juror can easily comprehend the facts of this case and does not require the assistance of an expert to adequately assess these facts. *See* J. Weinstein & M. Berger, Weinstein's Federal Evidence § 702.03[2][b], 702-39 (2d ed. 2005). Further, Mr. Bracey's proposed testimony does not satisfy the *Daubert* factors of admissibility or Rule 702's standards of admissibility for multiple reasons including, but not limited to, the fact that his opinion is based upon subjective hearsay evidence of his own family members living in the southern United States. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 25 (1st Cir. 1999). Finally, Mr. Bracey's testimony must be excluded because its prejudicial effect outweighs its probative value. *See* Fed. R. Evid. 403; *Dirico v. City of Quincy*, 2005 U.S. App. LEXIS 5379 (D.Mass 2005).

       3.       Exclusion of Expert Testimony on Emotional Distress Damages

Stop & Shop reserves the right to move to exclude testimony related to Plaintiff's alleged emotional distress as Defendant is awaiting production of Plaintiff's full and complete medical records in response to subpoenas.

## VII. Requested Amendments to the Pleadings

There are no requested amendments to the pleadings.

## VIII. Additional Matters to Aid in Disposition of the Case

None.

## VIII. Length of Jury Trial

Stop & Shop estimates it requires five (5) full days or ten (10) half days for trial.

## IX. Trial Witnesses

Defendant anticipates that the individuals listed below may be called to testify. Defendant reserves the right to amend this list to include additional witnesses and/or to add additional subjects of testimony where necessary. Defendant also reserves the right to call any witness listed by Plaintiff and to object to the introduction of testimony offered by any witness listed by Plaintiff. Because this document will be made accessible to the public, Defendant has withheld witness addresses and contact information, but provide this information to Plaintiff.

| Proposed Witness | Purpose of Testimony |
| --- | --- |
| Jerry Bidwell | Will testify about the investigation of the rope incident; the physical layout of the store mezzanine on December 10, 2003; and other facts relevant to the allegations of Plaintiff's Complaint. |
| Brenda Broad | Will testify about the investigation of the rope incident and other facts relevant to the allegations of Plaintiff's Complaint. |
| Joel Boon | Will testify about the investigation of the rope incident and other facts relevant to the allegations in Plaintiff's Complaint. |
| Allan Cave | Will testify about the investigation of the rope incident and other facts relevant to the allegations in Plaintiff's Complaint. |
| Mary Downing Colcombe | Will testify about the investigation of the rope incident; the physical layout of the store mezzanine on December 10, 2003; and other facts relevant to the allegations in Plaintiff's Complaint. |
| William Cummings | Will testify about the decision to discipline Ingalls, Rankin and Kaletta; the physical layout of the store mezzanine on December 10, 2003; and other facts relevant to the allegations in Plaintiff's Complaint. |
| Cindy Flannery | Will testify about the investigation of the rope incident; the physical layout of the store mezzanine on December 10, 2003; and other facts relevant to the allegations of Plaintiff's Complaint. |
| Jen Gatto | Will testify about her knowledge of the rope incident and other facts relevant to the allegations in Plaintiff's Complaint. |

| Proposed Witness | Purpose of Testimony |
|---|---|
| Charles Ingalls | Will testify about the rope incident; the physical layout of the store mezzanine on December 10, 2003; and other facts relevant to the allegations in Plaintiff's Complaint. |
| Stanley Kaletta | Will testify about the rope incident; the physical layout of the store mezzanine on December 10, 2003; and other facts relevant to the allegations in Plaintiff's Complaint. |
| Maureen McGurl | Will testify about the decision to discipline Ingalls, Rankin and Kaletta and other facts relevant to the allegations in Plaintiff's Complaint. |
| Frances Novak | Will testify about her knowledge of the rope incident and other facts relevant to the allegations in Plaintiff's Complaint. |
| Jeramie Rankin | Will testify about the rope incident; the physical layout of the store mezzanine on December 10, 2003; and other facts relevant to the allegations in Plaintiff's Complaint. |
| Irene Regonini | Will testify about her knowledge of the rope incident and other facts relevant to the allegations in Plaintiff's Complaint. |
| Rita Robbins | Will testify about her knowledge of the rope incident and other facts relevant to the allegations in Plaintiff's Complaint. |
| Kathy Russello | Will testify about the investigation of the rope incident and other facts relevant to the allegations of Plaintiff's Complaint. |
| Janet Seeds | Will testify about her duties as cash department head in Chicopee store; the physical layout of the store mezzanine on December 10, 2003; and other facts relevant to the allegations in Plaintiff's Complaint. |
| Diane Thayer | Will testify about the training programs provided to Stop & Shop employees and other facts relevant to the allegations in Plaintiff's Complaint. |
| John Vey | Will testify about the investigation of the rope incident and other facts relevant to the allegations in Plaintiff's Complaint. |
| Andrea Wall | Will testify about the content of Defendant's training programs and other facts relevant to the allegations in Plaintiff's Complaint. |
| Brian Whalen | Will testify about management of the Chicopee store; investigations of the rope incident; the physical layout of the store mezzanine on December 10, 2003; and other facts relevant to the allegations in Plaintiff's Complaint. |
| Tania Whitaker | Will testify about training provided in the Chicopee store and other facts relevant to the allegations in Plaintiff's Complaint. |
| Marcy Wutka | Will testify about management of the Chicopee store; the investigation of the rope incident; the physical layout of the store mezzanine on December 10, 2003; and other facts relevant to the allegations in Plaintiff's Complaint. |
| Scott Ziter | Will testify about the investigation of the rope incident and other facts relevant to the allegations in Plaintiff's Complaint. |

| Proposed Witness | Purpose of Testimony |
|---|---|
| Anne Burowski, P.A.* | Will testify about Plaintiff's treatment during the relevant time period and other facts relevant to the allegations of Plaintiff's Complaint. |
| Ernad Eskander, M.D.* | Will testify about Plaintiff's treatment during the relevant time period and other facts relevant to the allegations of Plaintiff's Complaint. |
| Marc Goldman, M.D.* | Will testify about Plaintiff's treatment during the relevant time period and other facts relevant to the allegations of Plaintiff's Complaint. |
| Luz Martin, M.D.* | Will testify about Plaintiff's treatment during the relevant time period and other facts relevant to the allegations of Plaintiff's Complaint. |

\* Defendant reserves the right to object to the introduction of testimony offered by this witness. Defendant awaits the production, pursuant to a subpoena, of full and complete medical records chronicling the care provided by this individual. Defendant cannot make a determination about this potential testimony offered by this witness prior to review of the records prepared for or maintained by or on behalf of this witness.

### X.  Proposed Exhibits

Defendant proposes the documents listed below for use at trial. Defendant reserves the right to amend this list to include additional documents and information. Defendant reserves the right to make use of any exhibit listed by Plaintiff and to object to the introduction of any exhibit listed by Plaintiff.

| No | Proposed Exhibit | Bates No./ Identifier |
|---|---|---|
| 1. | 12/16/03 MCAD Charge of Discrimination | |
| 2. | Plaintiff's Amended Complaint | |
| 3. | Defendant's Answer to Amended Complaint | |
| 4. | Defendant's Answers to Plaintiff's Interrogatories | |
| 5. | Plaintiff's Answers to Defendant's First Set of Interrogatories | |

| 6. | Drawing of mezzanine by Rosemond | Rosemond Deposition Exhibit 2 |
|---|---|---|
| 7. | Drawing of mezzanine by Bidwell | Bidwell Deposition Exhibit 1 |
| 8. | Drawing of mezzanine by Rankin | Rankin Deposition Exhibit 1 |
| 9. | Drawing of mezzanine by Ingalls | Ingalls Deposition Exhibit 1 |
| 10. | Policies and Procedures Acknowledgment Form | S&S 096 |
| 11. | Position Statement | S&S 110-116 |
| 12. | Stop & Shop's EEO Policy | S&S 114 |
| 13. | Stop & Shop's Anti-Harassment Policy | S&S 115-116 |
| 14. | List of employees who worked on 12/10/06 | S&S 127 |
| 15. | Confidential CSD Case Report | S&S 128-130 |
| 16. | Videotape Information of employees entering/leaving time clock area | S&S 131 |
| 17. | Memo from Ziter to Barsalou | S&S 132-133 |
| 18. | Flannery notes | S&S 133 |
| 19. | Confidential Case Report 12/18/03 | S&S 134-139 |
| 20. | Communications regarding training | S&S 143; 157-158 |
| 21 | Harassment Prevention and Sensitivity Awareness Training | S&S 144-156 |
| 22. | Polaroid photo(s) taken of the rope by Plaintiff | S&S 159 |
| 23. | Employee time cards from 12/10/2003 | S&S 216-231; 241-247 |
| 24. | Kaletta Report of Change form | S&S 232 |
| 25. | Rankin 12/12/03 Report of Change form | S&S 448 |
| 26. | Rankin 12/26/03 Report of Change form | S&S 235 |
| 27. | Rankin Associate Counseling Record | S&S 233-234 |

| 28. | Ingalls 12/12/03 Report of Change form | S&S 447 |
| --- | --- | --- |
| 29. | Ingalls 12/26/03 Report of Change form | S&S 238 |
| 30. | Ingalls Associate Counseling Record | S&S 236-237 |
| 31. | Memo from Bidwell to Broad | S&S 239-240 |
| 32. | Rosemond 2004 Absentee Calendar | S&S 260 |
| 33. | Salary continuation memo | S&S 449 |
| 34. | Notes regarding short term disability | S&S 450 |
| 35. | Shweiri email regarding disability benefits | S&S 451 |
| 36. | Confirmation of benefits letter | S&S 452 |
| 37. | Statement of Claim form | S&S 453 |
| 38. | Request for FMLA Leave form | S&S 454-455 |
| 39. | Certification of Health Care Provider form | S&S 456-458 |
| 40.* | Plaintiff's medical records | Pltff 00002-04; 000018-25 |
| 41.* | Plaintiff's medical records as maintained by Emad Eskander, M.D. | Awaiting response to subpoena |
| 42.* | Plaintiff's medical records as maintained by Hampden County Physicians Associates | Awaiting response to subpoena |
| 43.* | Plaintiff's medical records as maintained by Luz Martin, M.D. | Awaiting response to subpoena |
| 44.* | Plaintiff's medical records as maintained by Marc Goldman, M.D. | Awaiting response to subpoena |
| 45. | Rope | To be provided prior to trial |
| 46. | Floor plan of Chicopee store mezzanine | To be provided prior to trial |
| 47. | Photos of Chicopee store mezzanine | To be provided prior to trial |
| 48. | Time Line of Events | To be provided prior to trial |

\* Defendant is awaiting complete production of these documents pursuant to subpoena and reserves its right to object at a later date to their use at trial. By including these documents in this memorandum, Defendant does not waive its right to seek to exclude any or all of them from use at trial whether through objection or other motion practice.

        Respectfully submitted,

        THE STOP & SHOP SUPERMARKET COMPANY LLC
        By its attorneys,

        /s/ Leah M. Moore
        Lisa J. Damon (BBO No. 558843)
        Leah M. Moore (BBO No. 658217)
        SEYFARTH SHAW LLP
        World Trade Center East
        Two Seaport Lane, Suite 300
        Boston, MA 02210
        (617) 946-4800

Dated: December 15, 2006

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper will be sent to those indicated as not registered participants on December 15, 2006

        /s/ Leah M. Moore