UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-30072-MAP

JOSEPH ROSEMOND, )
      Plaintiff )
 )
v. )
 )
STOP AND SHOP SUPERMARKET )
COMPANY, )
      Defendant )
 )
_____ )

## PLAINTIFF'S PRETRIAL MEMORANDUM

Pursuant to order of the Court (Ponsor, U.S.D.J.) and relevant rules of civil procedure, the Plaintiff, Joseph Rosemond, hereby submits this pretrial memorandum. Counsel for the Plaintiff respectfully requests leave to supplement its list of witnesses and proposed trial exhibits no later than ten (10) days from the date of the pretrial conference.

(1) <u>Summary of the Evidence</u>

The Plaintiff expects the evidence to show that his employment with the Defendant started in 1994. The Plaintiff is an African American. On or about December 10, 2003, the Plaintiff arrived at work and discovered a noose hanging in his office. A supervisor of the perpetrators was aware that two of his direct reports had hung the noose. The supervisor neither removed the noose nor took any disciplinary action against the perpetrators. During the course of an investigation into the incident, the Defendant identified the perpetrators. Both individuals were suspended; neither individual was terminated. The perpetrators were interviewed during the investigation and stated that the hanging of the noose was a "joke". At the completion of the investigation, the Defendant concluded that the noose was a joke with no intent to harm anyone. In the past, the Defendant had terminated employees for minor infractions

such as theft of small items.

The Plaintiff was very distraught following the incident and sought counseling. He was out of work from December, 2003 until July, 2004. The Plaintiff had been raised in the South and could personally recall lynching of African Americans.

(2) <u>Established Facts</u>

1. Mr. Rosemond is African American.

2. Mr. Rosemond has been employed with the Defendant as management employee since July of 1994.

3. In December of 2003, Mr. Rosemond was the Customer Service Manager at the Defendant's store located in Chicopee, Massachusetts.

4. In December of 2003, Mr. Rosemond's desk and workspace were located in the mezzanine area of the Chicopee Store.

5. In December of 2003, Marcy Wutka, Mr. Rosemond's colleague, also had a desk in the mezzanine area.

6. On December 10, 2003, Mr. Rosemond took photographs of the noose.

7. On December 10, 2003, Mr. Rosemond took the noose down and placed the noose in his car along with the pictures he took of the noose hanging.

8. On December 10, 2003, Mr. Rosemond spoke to Chicopee Store Manager Brian Whalen about the noose.

9. On December 10, 2003, Mr. Whalen initiated an investigation.

10. After the noose incident, Mr. Rosemond went on medical leave for approximately six months.

11. In June of 2004, Mr. Rosemond informed the Defendant that he was returning to work.

12. In June of 2004, Mr. Rosemond became the Customer Service Manager at the Defendant's store located in West Springfield, Massachusetts.

(3) <u>Contested Facts</u>

On the morning of December 10, 2003, Mr. Rosemond discovered a noose hanging from the ceiling of his workspace, near his desk. Mr. Rosemond and Marcy Wutka, the Perishables Manager of the Chicopee Store, shared this workspace. The desks of Mr. Rosemond and Ms. Wutka were placed next to each other. At the time Mr. Rosemond found the noose, Ms. Wutka was on vacation. The employees involved in hanging the noose were aware that Ms. Wutka was not working on December 10th and Mr. Rosemond was scheduled to work.

Because a noose is a symbol and instrument of racially motivated violence against African Americans, the noose made Mr. Rosemond feel offended, threatened, and intimidated. Mr. Rosemond explained, "I'm from South Carolina, when I was a kid, everyday you could turn on the TV and hear about a black man hanging from a tree. It brings back painful memories."

Following Mr. Rosemond's complaint to Mr. Whalen, Defendant conducted an investigation into the noose incident. However, Mr. Whalen admitted that he did not take any action regarding Mr. Rosemond's complaint until after John Vey, Defendant's Loss Prevention/Security Officer, notified him that Mr. Rosemond was upset about the noose. Additionally, Mr. Whalen also stated that he felt the whole thing was being blown out of proportion.

Defendant was aware that Marcy Wutka had been on vacation when the noose was hung in Mr. Rosemond's workspace. Nevertheless, the Defendant chose to focus its initial investigatory interviews on whether the incident was a threat to Ms. Wutka, a Caucasian female. The Defendant's investigation revealed that three of Defendant's employees were involved in the noose incident. The investigation revealed that Charles

Ingalls, the Head Cutter, and Jeramie Rankin, a Seafood Clerk, entered Mr. Rosemond's workspace and hung the noose. The investigation also showed that Stanley Kaletta, the Manager of the Chicopee Store's Meat Department, later joined Mr. Rankin and Mr. Ingalls in Mr. Rosemond's workspace, saw the hanging noose, and jokingly commented on the noose.

Video surveillance tapes showed that Mr. Kaletta entered shortly after Mr. Ingalls and Mr. Rankin, stayed in the office for several minutes, and left the office shortly after Mr. Ingalls and Mr. Rankin. At least one of the individuals who admitted to hanging the noose, Mr. Ingalls, indicated that Mr. Kaletta was present during the noose hanging. Additionally, Scott Ziter, Defendant's Director of Security, told Mr. Rosemond that he had reviewed the security tapes, interviewed people, and discovered that Mr. Rankin, Mr. Ingalls and Mr. Kaletta hung the noose.

Mr. Kaletta was the supervisor of Mr. Rankin and Mr. Ingalls. Pursuant to Defendant's policies, Mr. Kaletta, as a supervisor, was required to report harassment and uphold the anti-harassment policies. Nevertheless, Mr. Kaletta did not discipline or reprimand Mr. Rankin and Mr. Ingalls, take down the noose, report the incident, or take any other corrective action. If Mr. Kaletta had responded appropriately to the noose, Mr. Rosemond could have been spared the harassment of finding a noose hanging in his workspace.

On December 12, 2003, Defendant suspended Mr. Rankin and Mr. Ingalls pending an investigation. Although Defendant was aware of Mr. Kaletta's involvement, Defendant did not suspend Mr. Kaletta pending the investigation. Defendant merely told Mr. Kaletta that the incident would be documented in his file. After the conclusion of its investigation, Defendant did not subject Mr. Kaletta to any disciplinary action.

Allan Cave, an African American and Defendant's then-Vice President of Human Resources, was one of four people involved in making the final decision regarding the disciplinary action for Mr. Ingalls, Mr. Rankin and Mr. Kaletta. Mr. Cave believed that the employees involved in the noose incident should have been terminated. In a discussion regarding whether the individuals should be terminated, Mr. Cave expressed his viewpoint and explained the meaning and significance of a noose to African

4


...


Americans to Mr. Barsalou, Defendant's Vice President of Operations.

It was the Defendant's policy that theft in the amount of a nickel, harassment, threats and violence were all offenses which would result in immediate termination. Nevertheless, the Defendant ultimately decided that the hanging of a noose in an African American's office was not a terminable offense. On or about December 26, 2003, at the conclusion of Defendant's investigation, Mr. Ingalls and Mr. Rankin were permitted to return to work for the Defendant with only a warning placed in their personnel files.

Mr. Rosemond was unable to return to work for seven months due to the emotional distress, recurring headaches, and insomnia that he suffered as a result of finding a noose hanging in his workspace and Defendant's incommensurate and inappropriate response thereto.

(4) Jurisdictional Questions

None

(5) Pending Motions

None

(6) Issues of Law

a)  Whether there is sufficient evidence for a jury to conclude that (1) Mr. Rosemond was subjected to harassment because of his race; (2) Mr. Rosemond subjectively felt that the harassment altered his working environment and created a barrier to full participation in the workplace; and (3) a reasonable African American in Mr. Rosemond's position would find that the harassment altered his working environment and created a barrier to full participation in the workplace.  Noviello v. City of Boston, 398 F.3d 76 (1st Cir. 2005); Muzzy v. Cahillane Motors, Inc., 434 Mass. 409

(2001); see also McGinest v. GTE Service Corp., 360 F.3d 1103 (9th Cir. 2004) (considering both the existence and the severity of discrimination from the perspective of a reasonable person of the plaintiff's race); Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998)(advocating "sensitivity to social context" in the reasonable person standard).

    b)  Whether there is sufficient evidence for a jury to conclude that the Defendant knew or should have known about the harassment, and failed to take prompt and appropriate remedial action.  See Crowley v. L.L. Bean, Inc., 303 F.3d 387, 401 (1st Cir. 2002); College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156 (1987); Massachusetts Commission Against Discrimination Guidelines on Sexual Harassment, Section V(F).

(7) Amendments To Pleadings

    There are no requested amendments to the pleadings.

(8) Additional Matters

    There are no additional matters to aid in the disposition of the action.

(9) Trial

    This is a jury case.  It is anticipated that the length of the trial will be five to seven days.

(10) Plaintiff's Witnesses

Joseph Rosemond – Mr. Rosemond is expected to testify as to all of the facts underlying the claims in this matter.

Stanley Kaletta – Mr. Kaletta is expected to testify as to the facts surrounding the noose incident.

Kathy Collins – Ms. Collins is expected to testify as to the investigation conducted into the noose incident and her conclusions.

Isaac Kabodya – Mr. Kabodya is expected to testify as to his reaction to the noose incident.

Emad Eskander, M.D. – Dr. Eskander is expected to testify as to his treatment of Mr. Rosemond following the noose incident.

Brenda Broad – Ms. Broad is expected to testify as to her investigation into the noose incident and her conclusions.

Jeramie Rankin – Mr. Rankin is expected to testify as to his involvement in the noose incident.

Mrs. Rosemond – Mrs. Rosemond is expected to testify as to her observations of Mr. Rosemond's response to the noose incident.

Ann Burowski, M.D. – Dr. Burowski is expected to testify as to her treatment of Mr. Rosemond following the noose incident.

Don Barsalou – Mr. Barsalou is expected to testify as to his knowledge of the facts underlying Mr. Rosemond's claims and the relevant policies of the Defendant.

Cynthia Flannery – Ms. Flannery is expected to testify as to her knowledge of the noose incident, the conduct of any investigation into the noose incident and the relevant policies of the Defendant.

Prof. John Bracey – Prof. John Bracey is expected to testify as an expert witness as to the historical significance of the noose to an African American.

Scott Ziter – Mr. Ziter is expected to testify as to his investigation into the noose incident.

Brian Whalen – Mr. Whalen is expected to testify as to his discussions with Mr. Rosemond and Mr. Whalen's response regarding the noose incident.

Charles Ingalls – Mr. Ingalls is expected to testify as to his involvement with the noose incident.

Jennifer Gatto – Ms. Gatto is expected to testify as to her knowledge of the noose incident, including but not limited to, her response thereto.

Gerry Bidwell – Mr. Bidwell is expected to testify as to his investigation into the noose incident.

(11) <u>Proposed Exhibits</u>

Rosemond Psychiatric Progress Notes

Brenda Broad Investigation Notes

Investigation Notes, Bate Stamped 264-265

Flannery Confidential Case Report

Videotape Information Sheet, Bates Stamped 22

Ziter Memorandum to Barsalou

Russello Confidential Case Report

Whitaker Email Regarding Sexual Harassment Training

Kaletta Report of Change Form

Ingalls and Rankin Associate Counseling Records

Bidwell Investigation Memorandum

Marcie Wutka 2003 Absentee Calendar

Defendant's Investigation Notes

Equal Employment Opportunity Policy, Bates Stamped 9

Anti-Harassment Policy, Bates Stamped 6-7

Harassment Prevention and Sensitivity Training, Bates Stamped 35-47

Unlawful Harassment Policy, Bates Stamped 42

Photograph of hanging noose

Drawing of the Mezzanine Area by Plaintiff

Report of John H. Bracey, Jr.

A Resolution Apologizing to the Victims of Lynching and the Descendants of Those Victims for the Failure of the Senate to Enact Anti-Lynching Legislation, S. Res. 39, 109th Cong. (2005)

151 CONG. REC. S6365-S6378 (daily ed. June 13, 2005)(statements of Sen. Mary Landrieu [D-LA], Sen. Mark Pryor [D-AR], Sen. Richard Durbin [D-IL]).

                                  Respectfully submitted,
                                  The Plaintiff, Joseph Rosemond,
                                  By His Attorney,

                            By:   /s/ Tani E. Sapirstein
                                  Tani E. Sapirstein, Esq.
                                  BBO #236850
                                  SAPIRSTEIN & SAPIRSTEIN
                                  1350 Main Street, 12th Floor
                                  Springfield, MA 01103
                                  Tel:   (413) 827-7500
                                  Fax:  (413) 827-7797

Date: December 18, 2006

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the above document was served upon the following, via first class mail, postage prepaid, to:

        Lisa J. Damon, Esq.
        Leah M. Moore, Esq.
        Seyfarth Shaw LLP
        World Trade Center East
        Two Seaport Lane, Suite 300
        Boston, MA 02210-2028

                                  /s/ Tani E. Sapirstein
                                  Tani E. Sapirstein

Date: December 18, 2006

K:\WP61\CASEFILE\ROSEMOND\Pretrial Memo.doc